In the
United States Court of Appeals
For the Seventh Circuit

No. 00-3675

NINA L. SCHREINER,

Plaintiff-Appellant,

v.

CATERPILLAR, INCORPORATED,

Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 98 C 7007--James B. Zagel, Judge.

ARGUED APRIL 12, 2001--DECIDED MAY 17, 2001

   Before EASTERBROOK, RIPPLE and WILLIAMS,
Circuit Judges.

   RIPPLE, Circuit Judge.  Nina Schreiner
sued her employer, Caterpillar, Inc., for
sex discrimination and sexual harassment
under Title VII of the Civil Rights Act
of 1964, 42 U.S.C. sec. 2000e et seq. The
district court granted summary judgment
in favor of Caterpillar on the sexual
harassment claim. The sex discrimination
claim was tried to a jury, which found in
favor of Caterpillar. Focusing solely on
the discrimination count on which the
jury returned a verdict in favor of
Caterpillar, Ms. Schreiner now seeks
review of the district court's ruling on
a motion in limine that excluded evidence
of a supervisor's derogatory comments
about women. For the reasons set forth in
the following opinion, we affirm the
judgment of the district court.

I

BACKGROUND

A.  Facts

   Ms. Schreiner worked as a machinist in
the swivel cell section at
Caterpillar./1 Her position, a level-4
classification, has four pay steps. Ms.
Schreiner began in the swivel cell
section at a job classification level of

4-2. On March 4, 1996, Ms. Schreiner asked her line supervisor, Mike Canady, for a step increase to level 4-3. Canady denied her request, saying that her department was "running too much scrap." R.36-1 at 71. Ms. Schreiner resubmitted her request on October 4, 1996, and Canady in turn submitted it to the area supervisor, Roy Gardner. Gardner approved the request four days later. On April 30, 1997, Ms. Schreiner requested another step increase. Her new line supervisor, Henry Edwards, denied her request, saying, "that is not how it is done." Id. at 100. She later resubmitted her request to a new supervisor on August 12, 1997. This time, her request was forwarded to Gardner, who approved it three days later. Following this increase, Ms. Schreiner was working at level 4-4, the highest step available at level 4.

Ms. Schreiner was the only woman in the swivel cell area. Three male employees who had spent time working in the swivel cell area had been promoted to level 4-4 in substantially less time than Ms. Schreiner. Ms. Schreiner believed that the delays in her promotion were because of her gender. She also believed that Gardner was unnecessarily harsh with her, and she eventually filed harassment and discrimination claims against him.

In December 1996, during an investigation of harassment and discrimination allegations made by Ms. Schreiner, Gardner stated that the swivel cell area was "not a woman's area." R.13, Ex.5 at 1 (internal quotation marks omit ted). When asked to explain his view, Gardner stated, "Women can play in the NFL but do you see them on the field?" Id. at 2 (internal quotation marks omitted).

B.  District Court Proceedings

Ms. Schreiner filed discrimination and harassment charges against Caterpillar in district court. Caterpillar moved for summary judgment. The district court granted the motion only on the harassment claim./2 With respect to Ms. Schreiner's discrimination claim, the district court determined that Gardner's gender-related comments did not constitute direct evidence of discrimination because there was no indication that Gardner was responsible

for the delays in Ms. Schreiner's step increases. Instead, it was the line supervisors' refusals to submit Ms. Schreiner's requests to Gardner that caused the delays. Applying the familiar McDonnell Douglas test, however, the court nevertheless allowed the discrimination claim to go to the jury based on Ms. Schreiner's evidence that three men were promoted much more quickly than she was and that the reasons proffered by Caterpillar for the disparity raised issues of fact that ought to be evaluated by the jury./3

Just before trial, Caterpillar filed a motion in limine to exclude any evidence of Gardner's gender-related comments on the grounds that the comments were irrelevant and prejudicial. The district court granted the motion. The court reasoned that, although Gardner's comments could be relevant to the issue of punitive damages, the evidence need not be introduced in the liability phase because the trial was bifurcated and the statements were not relevant on the issue of liability. In ruling, the district court referenced its earlier decision on the summary judgment motion. At that time, the district court had determined that Gardner's statement was not direct evidence of discrimination because it was the line supervisors, not Gardner, who had decided to delay consideration of Ms. Schreiner's step-increase request. The court also had noted that there was no evidence that Gardner had directed that the supervisors delay the increases. The court therefore granted Caterpillar's motion in limine. In due course, the jury returned a verdict in favor of Caterpillar. Ms. Schreiner now appeals the district court's ruling on the motion in limine.

II

DISCUSSION

As it comes to us on appeal, the only issue before us is whether the district court abused its discretion/4 in determining that Gardner's statements were not sufficiently relevant and probative on the issue of whether Caterpillar discriminated against Ms. Schreiner with respect to her rate of promotion. Caterpillar correctly points out that, as a general principle,

derogatory comments are relevant only when attributable to the person who made the adverse employment decision. See Cianci v. Pettibone Corp., 152 F.3d 723, 727 (7th Cir. 1998); Bahl v. Royal Indem. Co., 115 F.3d 1283, 1293 (7th Cir. 1997). Additionally, the comments must be related to the adverse decision. See Cianci, 152 F.3d at 727. Stray workplace comments unrelated to the alleged discriminatory employment decision are not sufficient to support an inference of discrimination. See Cullen v. Olin Corp., 195 F.3d 317, 323 (7th Cir. 1999), cert. denied, 529 U.S. 1020 (2000).

Given these principles, we cannot say that the district court abused its discretion in concluding that, on this record, the link between Gardner's sexist comments and the delays in Ms. Schreiner's step increases was too tenuous to constitute evidence of discrimination. The question before the jury was whether the line supervisors' decisions were motivated by gender. The district court correctly determined that the appropriate focus had to be on the intent of the line supervisors, not Gardner. It was the supervisors who had decided to delay Ms. Schreiner's increases. Gardner's remark, although made during an investigation of his treatment of Ms. Schreiner, was not made as part of the decision-making process with respect to her increases. There is no evidence that the delays in her step increases came as a direct result of any ill will or procrastination on Gardner's part. Indeed, there is no evidence that the line supervisors were even aware of these comments.

In her brief before this court, Ms. Schreiner argues further that Gardner's statements ought to have been admittedbecause, when evaluated along with other evidence of Gardner's behavior,/5 the jury could have concluded that the line supervisors were aware of Gardner's opinions regarding a woman working in the swivel cell area. As a result, the line supervisors may have been motivated to delay approaching Gardner about Ms. Schreiner's increases "to avoid conflict with Gardner's attitude." Appellant's Br. at 16.

Our cases acknowledge that a decision-maker cannot act as the "cat's paw" for

another who harbors a discriminatory animus. See Eiland v. Trinity Hosp., 150 F.3d 747, 752 (7th Cir. 1998); Sattar v. Motorola, Inc., 138 F.3d 1164, 1170 (7th Cir. 1998); Willis v. Marion County Auditor's Office, 118 F.3d 542, 547 (7th Cir. 1997). A decision-maker cannot be the "conduit" of another's prejudice. Shager v. Upjohn Co., 913 F.2d 398, 405 (7th Cir. 1990). Nevertheless, such a claim can survive only when there is a factual basis in the record for the assertion that the biased individual's prejudice was the motivation for the decision-maker's actions. In this case, Ms. Schreiner never developed the causal connection with any precision. In argument on the motion in limine, her counsel contended that Gardner's statements were relevant "to show the environment and the mind set and the intent of the parties that were involved." R.36-1 at 4. Admission of the statements, counsel submitted, would demonstrate "the environment that was created at Caterpillar at the time that Ms. Schreiner was attempting to move through the pay grades." Id. Yet, no attempt was made to demonstrate a more precise factual basis for the contention that Gardner's views were the operative factor in the decision made by the line supervisors.

It can be argued, with a fair degree of plausibility, that the admission of Gardner's statements would have been of some assistance to Ms. Schreiner in demonstrating pretext. As the case went to the jury, Caterpillar contended that the line supervisors had refused to submit Ms. Schreiner's requests for step increases as a matter of managerial judgment. According to Caterpillar, the supervisors based that judgment on concerns about the quality of Ms. Schreiner's work and, later, the manner in which she had sought the increase. Ms. Schreiner submitted that this explanation was pretextual because men had received increases at the same time. If Ms. Schreiner had been able to introduce Gardner's derogatory comments, it would have offered an explanation as to why the line supervisors had responded as they did.

On the other hand, the district court was entitled to take into account several factors that counseled against admitting

the evidence. As we have noted previously, it was never established that Gardner's statements were known to the line supervisors. Although the line supervisors may have known of Gardner's allegedly harsh treatment of Ms. Schreiner with respect to performance problems, it does not necessarily follow that they were aware of his views about women working in the swivel cell area. More to the point, Gardner made his comments in December 1996, after he had approved Ms. Schreiner's first step increase as soon as it was presented to him. It is impossible for Ms. Schreiner to argue, therefore, that Gardner's comments influenced Canady's decision not to submit her request for a step increase because the comments had not been made at the time Canady reached his decision. Gardner's statement was made four to five months prior to Edwards' refusal, but, given Gardner's action on the first request, it is more difficult to infer that Gardner directed or implied that Edwards should delay Ms. Schreiner's increases.

Given that there were plausible arguments on either side with respect to the admissibility of the statement, we cannot say that the district court abused its discretion when it decided not to admit Gardner's statements. The district court did not stray from "'the range of options from which one would expect a reasonable trial judge to select.'" United States v. Aldaco, 201 F.3d 979, 984 (7th Cir. 2000) (quoting United States v. Van Dreel, 155 F.3d 902, 905 (7th Cir. 1998)); see also United States v. Miller, 199 F.3d 416, 421 (7th Cir. 1999), cert. denied, 529 U.S. 1044 (2000); United States v. Heath, 188 F.3d 916, 920 (7th Cir. 1999).

Conclusion

Because we believe that the district court did not abuse its discretion in excluding the proffered evidence, the judgment of the district court is affirmed.

AFFIRMED

FOOTNOTES

/1 Ms. Schreiner still works for Caterpillar, but she now works in a different section of the

plant.

/2 Ms. Schreiner does not appeal this ruling.

/3 Specifically, the court believed that a reasonable fact-finder might conclude that the reasons given by the line supervisors for delaying the pay increase requests were pretextual. Although performance problems had been given as a reason, the step increases were eventually given without any appreciable improvement in Ms. Schreiner's performance. The rate of step increases for male employees also raised, in the district court's view, an issue of fact as to whether Ms. Schreiner had been treated evenhandedly. Finally, the district court believed that the jury ought to evaluate the supervisors' claim that Ms. Schreiner's initiation of the step-increase request to Edwards was not in keeping with the custom and practice of the company.

/4 We review a district court's ruling on an evidentiary issue for an abuse of discretion. See Speedy v. Rexnord Corp., 243 F.3d 397, 404 (7th Cir. 2001).

/5 The district court described the evidence submitted in support of the unsuccessful sexual harassment charge in the following terms:

Drawing all inferences in [Ms. Schreiner's] favor, the evidence is that Gardner spoke to her in a hostile and intimidating manner, and even yelled at her once, about running too much scrap, failing to check parts produced by other operators after she discovered a defect, suffering too many accidents in a short period of time, missing mandatory shift meetings, and missing too much work. Schreiner perceived some of these reprimands to threaten disciplinary action and believes that some were baseless and unfair.

R.19 at 10.