# In the
# United States Court of Appeals
## For the Seventh Circuit

——————————

No. 04-3615

DANIELLE CLARK HERNANDEZ,

*Plaintiff-Appellant,*

*v.*

HCH MILLER PARK JOINT VENTURE,

*Defendant-Appellee.*

——————————

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 02 C 320—**Charles N. Clevert, Jr.**, *Judge.*

——————————

ARGUED JUNE 9, 2005—DECIDED AUGUST 12, 2005

——————————

Before BAUER, RIPPLE, and MANION, *Circuit Judges.*

MANION, *Circuit Judge.* Danielle Hernandez sued her
former employer, HCH Miller Park Joint Venture ("HCH"),
for sex discrimination and retaliation under Title VII. A jury
returned a verdict in favor of HCH. Hernandez appeals,
challenging the district court's exclusion of evidence and its
mixed-motive jury instruction. We affirm.

I.

In 1997, construction began on Miller Park, the new baseball stadium for the Milwaukee Brewers. HCH served as the construction manager for this project. Although it subcontracted much of the work, HCH reserved for itself some tasks, including general cleanup, monitoring of conditions, preparing concrete forms, and the placement of concrete on the site. To perform these tasks, HCH employed carpenters, operators, and laborers. In June 1997, HCH hired Danielle Hernandez to work as a laborer.

Laborers at Miller Park performed a number of functions, including sweeping, cleaning, demolition, assisting carpenter crews, pouring and placing concrete, and working in the "bone yard" (an area near the construction site where materials, including lumber, were kept and organized). Laborers could be assigned to any of these tasks.

While working at Miller Park, Hernandez spent most of her time assisting the carpenter crew. Hernandez, however, preferred to work on the concrete crew because, although both assignments paid the same, Hernandez believed that she would qualify for more overtime pay on the concrete crew. Notwithstanding her desire to work with the concrete crew, during the approximately two years Hernandez worked for HCH, she was assigned to the concrete crew only four or five times. Hernandez regularly complained about the lack of more concrete assignments.

Hernandez also complained to the Milwaukee County Director of Contract Compliance that she was not given the opportunity to do more skilled work and that instead she was relegated to menial and dreary tasks, such as picking up, sweeping, and carrying lumber from one area to another. Hernandez claims that after she complained, she was exiled for two weeks to the "bone yard."

Following a crane accident in July 1999, which shut down construction temporarily, Hernandez accepted a position with another employer. In September 1999, Hernandez returned to HCH, but following a slowdown in work, she was again laid off in January 2000. In March 2000, she returned once more to Miller Park, but was terminated at the conclusion of that project.

Nearly two years later, on March 29, 2002, Hernandez filed suit against HCH alleging sex discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* Hernandez's claims were tried to a jury. To prove her claims of sex discrimination and retaliation, Hernandez wanted to present evidence that the toilet facilities at Miller Park were dirty and contained graffiti, contending that the condition of the toilets was essentially an attempt to discourage women from working at Miller Park. Prior to voir dire, HCH orally moved to exclude evidence related to the condition of the toilet facilities at Miller Park, arguing that this evidence was irrelevant and that any relevance was outweighed by unfair prejudice and, therefore, inadmissible under Fed. R. Evid. 403. The district court delayed ruling on this motion until trial. Once trial began and Hernandez called a witness expected to testify about the condition of the toilets, HCH renewed its objection to that testimony. After hearing additional argument, the district court ruled that the evidence was inadmissible.

Trial then proceeded, with the jury hearing from Hernandez and numerous HCH employees, who testified about Hernandez's employment at HCH, including her work assignments. Among other things, Hernandez presented evidence at trial that the few times that she was permitted to work on the concrete crew, she did her job very well. Conversely, HCH presented testimony that, when it

had assigned Hernandez to pour concrete, she moved awkwardly in and about the concrete, and that she failed to move the material efficiently. Also, she did not work at the necessary pace, and instead of digging into the concrete to move it forward, as required, she merely scratched the concrete surface. HCH also presented evidence that on one occasion Hernandez improperly walked through an area of finished concrete. In addition, there was testimony that employees of another subcontractor complained about her work and threatened to walk off the job if she were assigned to another concrete pour.

For her part, Hernandez testified at trial that on approximately ninety occasions she was denied overtime in favor of a male employee. HCH responded by providing an analysis of Hernandez's overtime compared to other employees. This analysis showed that Hernandez received 368 hours of overtime, and was in fact one of the highest overtime-earning laborers, other than management employees.

Additionally, at trial Hernandez claimed that she was assigned to the bone yard in retaliation for complaining about not being assigned to pour concrete. HCH presented testimony, however, that working in the bone yard was a typical assignment for laborers and that when she worked there, another male laborer had also been assigned that task. Hernandez further complained that the locks on some of the portable toilets were broken, but the HCH superintendent testified that when he was informed that a lock was broken, it was fixed within one day.

Following the trial testimony, the district court instructed the jury on the law of sex discrimination, including the law related to a mixed-motive case. The district court instructed

the jury that "if you find that the defendant's[1] sex was a motivating factor in the defendant's actions regarding the terms and conditions of plaintiff's employment, the plaintiff is entitled to your verdict, even if you find that the defendant's conduct was also motivated by a lawful reason." Hernandez had objected to this instruction, arguing that the district court should have used the word "treatment" as opposed to "terms and conditions," but the district court rejected Hernandez's formulation. The jury returned a verdict in favor of HCH. Hernandez appeals.

## II.

On appeal, Hernandez presents two arguments. First, she claims that the district court erred in excluding evidence about the condition of the toilets, including the presence of graffiti in the portable facilities. Second, Hernandez argues that the district court erred in rejecting her formulation of the mixed-motive instruction. We consider each issue in turn.

### A.  Condition of the Toilets

As noted, Hernandez first challenges the district court's exclusion of evidence concerning the condition of the toilets available at the Miller Park construction site. The district court held that this evidence was irrelevant because

---

[1] In reading this jury instruction, the district court mis-spoke, saying "defendant's" sex and not "plaintiff's" sex. Hernandez does not claim that this error constituted reversible error, and given that the clear focus in this case was Hernandez's claims of sex discrimination, we conclude that this slip of the tongue was harmless error.

Hernandez was not presenting a hostile work environment claim. Evidentiary rulings are reviewed for an abuse of discretion. *Manuel v. City of Chicago*, 335 F.3d 592, 595 (7th Cir. 2003).

On appeal, as to the graffiti, Hernandez claims this evidence was relevant because "[e]vidence that there was sexually-explicit graffiti in the portable toilets and that it remained there after Hernandez and other women complained is relevant to the question of whether Hernandez was treated less favorably than her male co-workers because of her sex." She further claims that "[e]vidence of sexually harassing comments or behavior may be admissible and relevant to show general sex bias and therefore to prove discriminatory intent."

Although in making these arguments on appeal Hernandez maintains that the graffiti was sexually explicit and was "sexually harassing," her offer of proof before the district court did not state that the graffiti was of a sexual or anti-female nature. On appeal, Hernandez attempted to overcome this deficiency by filing with this court photographs depicting the graffiti. However, this court may only consider evidence properly presented to the district court, and, before the district court, Hernandez failed to proffer any evidence that the graffiti had anything to do with sex or women. *See United States v. Elizalde-Adame*, 262 F.3d 637, 640 (7th Cir. 2001) (holding that a party cannot "add materials to the record on appeal which were not before the district court").

Moreover, even assuming the graffiti was sexually charged, Hernandez failed to tie the graffiti to an HCH employee, much less a decisionmaker. This is significant because Hernandez did not present a hostile environment claim, but instead argues that the graffiti helps establish that

HCH had a general bias against women. However, without evidence that a decisionmaker was responsible for the graffiti, evidence that the graffiti was sexually charged cannot establish that a decisionmaker holds an anti-female bias, and, in this case, the evidence established that hundreds of subcontractors worked on the construction site, and any one of them could have been responsible for the graffiti. Or the graffiti might have been on the portable toilets prior to their placement at Miller Park. Therefore, evidence of the graffiti is irrelevant to Hernandez's sex discrimination claim against HCH. *See Schreiner v. Caterpillar, Inc.*, 250 F.3d 1096, 1099 (7th Cir. 2001) (holding that sexist comments "are relevant only when attributable to the person who made the adverse employment decision," and affirming the district court's exclusion of such comments).

Hernandez also claims that evidence pertaining to the condition of the toilets was admissible to establish an anti-female bias. However, Hernandez failed to proffer any evidence showing that HCH maintained the toilets differently for men and women. Rather, she merely sought to show that the toilets were disgusting. The district court did not abuse its discretion in concluding that such evidence was irrelevant to the issue of sex discrimination because Hernandez failed to show any discriminatory motive in the maintenance of the toilets.[2]

Finally, Hernandez asserts that the evidence concerning the graffiti and the condition of the toilets was admissible to support her retaliation claim. Specifically, Hernandez

---

[2] Hernandez seemingly argues that the condition of the toilets affected women differently than men. However, Hernandez did not present a disparate impact claim, much less evidence or argument to the district court to support a claim of disparate impact. Therefore, this argument also lacks merit.

argues that she was fired for complaining about, among other things, the graffiti and the conditions of the toilets, and thus this evidence was admissible to support a claim of retaliation. To prevail on a claim of retaliation, "the plaintiff must show that: (1) [s]he complained about conduct that is prohibited by Title VII; (2) [s]he suffered an adverse employment action; and (3) the adverse employment action was caused by h[er] opposition to the unlawful employment practice." *Miller v. Am. Family Mut. Ins. Co.*, 203 F.3d 997, 1007 (7th Cir. 2000).

As noted above, in arguing for the admission of this evidence, Hernandez focused on the disgusting condition of the toilets, but she did not claim that HCH maintained the toilets differently for men and women. She also failed to explain to the district court how the condition of the toilets constituted a violation of Title VII. Although, to prevail on a retaliation claim, a plaintiff need not have opposed an action that *in fact* violated Title VII, *Fine v. Ryan Int'l Airlines*, 305 F.3d 746, 752 (7th Cir. 2002), a plaintiff must "reasonably believe[ ] in good faith that the practice she opposed violated Title VII." *Id.* Before the district court in making her offer of proof, Hernandez, however, failed to present legal support for the proposition that complaining about the condition of the toilets could reasonably be considered a complaint about a violation of Title VII. *See Young v. Rabideau*, 821 F.2d 373, 376 (7th Cir. 1987) (holding that although a formal offer of proof is not necessary, the plaintiff must "make the appropriate arguments to the district court that he now makes on appeal in order to alert the trial court to the issue"). Under these circumstances, the district court did not abuse its discretion in excluding evidence concerning the graffiti or the condition of the toilets as irrelevant to Hernandez's discrimination and retaliation claims.

## B.  Jury Instructions

Hernandez's second argument on appeal is that the district court erred in instructing the jury on the law regarding a mixed-motive employment decision. As excerpted above, at trial the district court instructed the jury that: "[I]f you find that the defendant's [sic] sex was a motivating factor in the defendant's actions regarding the terms and conditions of plaintiff's employment, the plaintiff is entitled to your verdict, even if you find that the defendant's conduct was also motivated by a lawful reason." Hernandez argues on appeal that this instruction was misleading because the phrase "terms and conditions" was not broad enough, and that the district court should have accepted her formulation, which would have instructed the jury to find in her favor if her sex was a motivating factor in the defendant's actions regarding her "treatment."

In reviewing jury instructions, this court seeks "to determine if the instructions as a whole were sufficient to inform the jury correctly of the applicable law." *Bronk v. Ineichen*, 54 F.3d 425, 429 (7th Cir. 1995). To determine the applicable law, we turn to the Civil Rights Act of 1991, which, among other things, established the governing standard in mixed-motive cases, providing that "an unlawful employment practice is established when the complaining party demonstrates that . . . sex . . . was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m).[3]

---

[3] The Civil Rights Act of 1991 further provided that if an individual proves a violation under § 2000e-2(m), the employer can avail itself of a limited affirmative defense that restricts the

(continued...)

Although we have noted that district courts are best advised to rely on the statutory language in framing jury instructions, *Akrabawi v. Carnes Co.*, 152 F.3d 688, 694 (7th Cir. 1998), the district court varied this language, using the phrase "terms and conditions of plaintiff's employment" instead of "employment practice."[4] Nonetheless, jury instructions need not be perfect. *Schobert v. Ill. Dep't of Transp.*, 304 F.3d 725, 730 (7th Cir. 2002). "We will not find reversible error in jury instructions if, taken as a whole, they fairly and accurately inform the jury about the law." *Trident Inv. Mgmt., Inc. v. Amoco Oil, Co.*, 194 F.3d 772, 780 (7th Cir. 1999).

In this case, although the district court's mixed-motive instruction spoke of the need for sex to be "a motivating factor in the defendant's actions regarding the *terms and conditions* of plaintiff's employment," as opposed to a motivating factor "for any employment practice," as the statute provided, the instruction fairly informed the jury of the law. That is because even in a mixed-motive case, Title VII requires that the plaintiff prove that her "compensation, terms, conditions, or privileges of employment" were adversely affected, 42 U.S.C. § 2000e-2(a)(1). In giving the mixed-motive instruction in this case, the district court merely combined these distinct legal issues, providing the

---

[3] (...continued)
available remedies if it demonstrates that it would have taken the same action absent the impermissible motivating factor. 42 U.S.C. § 2000e-5(g)(2)(B).

[4] Hernandez also did not seek an instruction based on the precise statutory language, and on appeal, she continues to maintain that the district court should have used the word "treatment" as opposed to the statutorily provided language of "employment practice."

jury, in one instruction, guidance on both the initial inquiry of whether HCH's conduct adversely affected a term or condition of Hernandez's employment,[5] and also on the secondary issue related to an employer's mixed motive. This is clear when one considers the district court's explanation for rejecting Hernandez's proposed modification of the mixed-motive jury instruction. The district court explained:

> The plaintiff wanted language regarding the treatment of the plaintiff; however, treatment of the plaintiff with regard to certain matters may not be discriminatory. And any treatment of the plaintiff with regard to matters that do not pertain to the terms or conditions of employment would not warrant compensation, and certainly would not lead to damages.

This also distinguishes Hernandez's case from *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003), which she claims establishes that the mixed-motive jury instruction provided by the court in this case was improper. In *Desert Palace*, the Supreme Court upheld a mixed-motive jury instruction that read: "If you find that the plaintiff's sex was a motivating factor in the defendant's treatment, the plaintiff is entitled to your verdict, even if you find that the defendant's conduct was also motivated by a lawful reason." *Id.* at 96. Hernandez claims that this shows that the district court

---

[5] In the mixed-motive jury instruction, the district court did not require Hernandez to establish an "adverse" term or condition. Rather, the district court established a lower standard, requiring only that Hernandez establish that sex was a motivating factor "regarding the terms and conditions of plaintiff's employment . . . ." But terms and conditions can be positively or adversely affected, and the instruction failed to make this distinction clear. Thus, if anything, the error in the instruction favored Hernandez.

should have used the word "treatment" and not "terms and conditions." Initially, we note that more than one formulation of a jury instruction may be appropriate, and therefore, the fact that the Supreme Court approved one version in *Desert Palace* does not mean that all other formulations are improper. In this case, however, Hernandez's reliance on *Desert Palace* is misplaced for an additional reason. In *Desert Palace*, in addition to the mixed-motive instruction, the district court also instructed the jury that the plaintiff must have "suffered adverse work conditions." *Id.* at 96. Thus, the use of the word "treatment" in *Desert Palace* was appropriate because the district court also instructed the jury of the need to find an "adverse work condition."

In response, Hernandez claims that the use of "terms and conditions" is improper because Title VII refers to "compensation, terms, conditions or privileges." This court, however, has often used the shorthand "terms and conditions" when speaking of the statutory standard. *See, e.g., Herron v. DaimlerChrysler Corp.*, 388 F.3d 293, 301 (7th Cir. 2004) (quoting *Haywood v. Lucent Techs., Inc.*, 323 F.3d 524, 532 (7th Cir. 2003) ("To demonstrate an adverse employment action, 'an employee must be able to show a quantitative or qualitative change in the *terms or conditions* of employment.' ") (emphasis added)). In the context of this case, we find nothing improper about the district court using a simplified and more understandable phrase when instructing the jury. In fact, in *Desert Palace*, the instruction provided concerning the requirement for an adverse action was even more simplified, providing merely that the plaintiff must have "suffered adverse work *conditions*." *Desert Palace*, 539 U.S. at 96 (emphasis added). Accordingly, we reject this argument as well. In sum, then, the district court's mixed-motive jury instruction, when considered in total, adequately informed the jury of Title VII law. There-

fore, Hernandez is not entitled to a new trial based on the district court's refusal to provide her version of the mixed-motive instruction.

### III.

The district court did not abuse its discretion in excluding evidence concerning the condition of the toilets, including the presence of graffiti, because this evidence was not relevant to Hernandez's discrimination and retaliation claims. The district court's mixed-motive jury instruction also fairly informed the jury of Title VII law. For these and the foregoing reasons, we AFFIRM.

A true Copy:

   Teste:

_____
*Clerk of the United States Court of
Appeals for the Seventh Circuit*