# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 11-3554

WILLIAM M. BLUE,

*Plaintiff-Appellant,*

*v.*

HARTFORD LIFE & ACCIDENT INSURANCE COMPANY,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 10 C 499—**Stephen L. Crocker**, *Magistrate Judge.*

ARGUED SEPTEMBER 6, 2012—DECIDED OCTOBER 18, 2012

Before EASTERBROOK, *Chief Judge,* and FLAUM and WILLIAMS, *Circuit Judges.*

FLAUM, *Circuit Judge.* William Blue's insurance company, Hartford Life & Accident ("Hartford"), withdrew his long-term disability benefits after doctors indicated that his condition had improved such that he was no longer incapable of occupying "any occupation" as his policy required. After an unsuccessful appeal,

Blue filed the instant lawsuit alleging breach of contract and bad faith denial of benefits. In the course of the suit, Blue discovered that Hartford had applied the incorrect standard to his policy determination. Instead of applying the "any occupation" standard, Hartford should have applied the more lenient "own occupation" standard. After an investigation, Hartford agreed that it applied the incorrect standard, and reinstated Blue's benefits with backpay. Hartford then filed a motion for summary judgment, arguing that Blue's contract claim was moot and that it was entitled to summary judgment on the bad faith claim. On the day his response was due, Blue's counsel requested an extension of time because of medical difficulties. The court granted that motion. Two days later, when Blue's response was again due, he requested a second extension of time, this time arguing that he was missing necessary discovery. The district court denied this request, and ruled on Hartford's summary judgment motion without Blue's response, concluding that Blue's contract claim was moot and that Hartford was entitled to summary judgment on the bad faith claim.

For the reasons set forth below, we affirm.

## I. Background

William Blue, a bus driver for the City of Madison, Wisconsin, was insured under a group long-term and short-term disability plan issued by Hartford. On September 10, 1998, Blue stopped working because of chronic headaches, and on September 18, Hartford approved his

request for short-term disability ("STD") benefits. After being diagnosed with sphenopalatine ganglion neuralgia, a condition that subjects the victim to chronic "ice cream headaches," Blue applied for long-term disability ("LTD") benefits, which Hartford approved. When Blue applied for STD and LTD benefits respectively, the qualifying criterion for the two policies differed. To qualify for STD benefits, Blue needed to show that he was unable to perform the duties of his own occupation. To qualify for LTD benefits, in contrast, he needed to show that he was prevented from doing "any occupation or work for which he was or could become qualified by training, education or experience." It is more difficult for a claimant to satisfy the "any occupation" standard.

On February 5, 2002, Hartford amended its LTD-insurance policy with the City, retroactive to February 1, 1993. The amendment changed the LTD policy's definition of disability from the original "any occupation" standard, to the more lenient "own occupation" standard.

When Blue applied for LTD benefits on March 29, 2001, the applicable LTD policy required a claimant to satisfy the "any occupation" standard. Blue was able to meet that standard, and he received LTD benefits for seven years. Each year, Hartford received a physician's statement reporting on Blue's condition, and by 2008, medical records suggested that his condition had improved significantly enough to allow him to return to work. Specifically, Blue's cardiologist reported that Blue had "improved cranial nerves" and acknowledged that his condition had improved. In May 2007, Maureen

Van Dinter, a nurse practitioner and Blue's primary medical provider, reported that Blue was "beginning to notice significant improvement in his headaches" due to new medication and that she anticipated he would be able to return to work in six to eight months. In response to a letter from Hartford in July 2008, Van Dinter indicated that Blue was capable of performing full-time light or sedentary work. Hartford's inquiry had focused on whether Blue could return to work at all, rather than whether he was capable of returning to work as a bus driver.

Hartford sent Blue a letter on September 24, 2008 notifying him that he was no longer eligible for LTD benefits. The letter quoted the "any occupation" language from Blue's original policy. The application of this standard, however, was a mistake. Hartford should have applied the more lenient "own occupation" standard that had become part of the policy pursuant to the 2002 retroactive amendment. Based on various reports from and conversations with Blue's doctors, Hartford denied Blue's claim for LTD benefits. Blue filed an appeal with Hartford challenging the decision, but his appeal was denied. Blue did not challenge the application of the "any occupation" standard at that time.

Hartford explains the application of the wrong standard as an innocent mistake caused by cross-office inefficiencies. The 2008 letter terminating Blue's LTD benefits was issued by Madeline Farrell, who was located in Hartford's Georgia office where Blue's claim was first evaluated. When Farrell requested a copy of

the applicable policy for Blue's claim in 2008, Hartford's Minneapolis office provided her with the "any occupation" policy that was in effect at the time of Hartford's initial approval of Blue's LTD benefits in 2001. The claim file does not reflect that the Minneapolis office sent Farrell the 2002 retroactive amendment. Accordingly, Farrell analyzed the file under the wrong disability definition.

Following his unsuccessful appeal, Blue retained counsel and filed suit in Wisconsin state court alleging (1) breach of contract and (2) bad faith denial of benefits. Hartford timely removed the lawsuit to the district court. The parties eventually filed cross-motions for summary judgment, Hartford on Blue's bad faith claim, and Blue on the breach of contract claim. Blue's filing of his motion for summary judgment began a series of missed deadlines by Blue's counsel. Blue's initial motion was due on January 31, 2011, but Blue's counsel missed the deadline and asked for an extension on February 7, 2011. Blue's counsel cited a long list of personal hardships that prevented him from filing on time: the death of a friend, the death of an aunt, the death of his uncle, and a series of illnesses (cold, bronchitis, torn retina, recurrence of torn retina, obstructed vision, food poisoning, fever, and a partially collapsed lung). He also indicated that his only associate had left his law firm. The court granted the motion and gave him until February 8, 2011 to file his motion for summary judgment. Blue's counsel missed the new February 8 deadline, claiming technical problems with

his office computer. Blue eventually filed his motion for summary judgment on February 10, 2011 and asserted for the first time that Hartford applied the incorrect standard to his claim.

Hartford investigated the allegation that it applied the wrong standard, and discovered that Blue was correct. On March 17, 2011, Hartford filed a motion with the district court acknowledging the mistake. The motion included an affidavit from Bruce Luddy, Hartford's Director of Litigation and Appeals, explaining the cross-office inefficiencies that led to the application of the "any occupation" standard rather than the "own occupation" standard. Hartford admitted liability, reinstated Blue's LTD benefits, and issued Blue a check for retroactive benefits dating from September 24, 2008, the date on which Hartford terminated his benefits. Although Hartford admitted liability for benefits on Blue's breach of contract claim, it continued to believe that summary judgment was appropriate as to Blue's bad faith claim, and it proposed a new briefing schedule to allow additional discovery regarding the application of the wrong policy standard. Hartford proposed April 18 as its deadline for its opening motion, May 9 for Blue's response deadline, and May 19 for Hartford's reply deadline. The district court gave Blue until March 25, 2011 to respond to Hartford's motion for a new briefing schedule. Blue filed his response one day late, on March 26, and agreed to the new schedule. The court set these deadlines on April 4, 2011.

Hartford filed its summary judgment motion on April 18 and included a second affidavit from Luddy. On April 21,

Blue's counsel contacted Hartford in an attempt to schedule the deposition of Luddy and others, but Hartford demanded that notices be issued prior to scheduling. On Friday April 22, at 5:17p.m., Blue's counsel e-mailed Hartford deposition notices for six different Hartford employees, scheduling them for ten days later. Although Hartford informed Blue's counsel that the dates noticed would not work, Blue's counsel waited until May 4 to propose May 19 as a possible deposition date. Blue's responsive deadline was May 9.

Blue did not meet his briefing deadline, but on May 9, Blue's counsel submitted a letter to the court stating that the previous evening he was admitted to the emergency room where he underwent surgery on his eye. He further informed the court that on that very morning, he "had no choice but to bring a companion animal into the vet to have her put down as a result of kidney failure." Blue's counsel sought a two-day extension, to which Hartford agreed, and which the district court approved. On May 11, Blue's counsel asked for another extension, this time blaming Hartford and its counsel for his inability to obtain discovery he thought was necessary to respond to the pending summary judgment motion. The district court denied his motion for an extension of time on May 19, stating in part that his latest request was "completely disproportionate to what the court so far has allowed, coming much too late in the process with no warning and seeking too much 'necessary' discovery after plaintiff's responsive deadline has run." The district court found that Blue

failed to show 'good cause' for extending the deadline yet again, and took Hartford's pending brief under advisement. Blue did not file an opposition brief. The depositions of Luddy and Christopher Davis, a Hartford senior appeal specialist, took place on May 19.

Because Blue did not file a response, the district court treated Hartford's proposed findings of fact as undisputed. The court concluded that Blue had not offered sufficient evidence to support his bad faith claim and found that Hartford's decision to reinstate Blue's LTD benefits and to pay Blue retroactive benefits rendered Blue's breach of contract claim moot. The district court granted summary judgment to Hartford.

Following the district court's entry of judgment in Hartford's favor, Blue filed a motion to amend the judgment under Rule 59(e). The district court denied Blue's motion, finding that Blue had shown no mistake of law or fact by the court as required by Rule 59(e). In denying the motion, the district court noted that Blue had known about Bruce Luddy since March 17, 2011, and had ample time to schedule his deposition prior to the summary judgment response deadline. The court also rejected Blue's attempt to revive his breach of contract claim, stating that the time to make that argument would have been in response to Hartford's summary judgment motion.

Blue appeals the district court's denial of his second motion for an extension of time. He also challenges the district court's entry of summary judgment in Hartford's favor on his bad faith and breach of contract claims.

## II.  Discussion

### A.  Motion for Extension of Time

Blue argues that the district court erred when it denied his second motion requesting an extension of time to respond to Hartford's motion for summary judgment. We review a district court's refusal to grant an extension of time to file responsive pleadings for abuse of discretion. *Jovanovic v. In-Sink-Erator Div. of Emerson Elec. Co.*, 201 F.3d 894, 896-97 (7th Cir. 2000). "[M]atters of trial management are for the district judge and we intervene only when it is apparent the judge has acted unreasonably." *Gonzalez v. Ingersoll Milling Mach. Co.*, 133 F.3d 1025, 1030 (7th Cir. 1998) (citations omitted).

The Federal Rules provide various procedures for seeking an extension of time. Rule 6(b) allows a district court to grant extensions of time prior to the expiration of a deadline for "good cause." Fed. R. Civ. P. 6(b). When the deadline has expired, Rule 6(b)(1)(B) allows a court to consider a motion for an extension of time for "excusable neglect." Rule 16(b)(4) requires a showing of good cause for modifications to a scheduling order. Finally, "[w]hen a party thinks it needs additional discovery in order to oppose a motion for summary judgment in the manner Rule 56(e) requires, Rule 56(f) of the Federal Rules of Civil Procedure provides a simple procedure for relief: move for a continuance and submit an affidavit explaining why the additional discovery is necessary." *Deere & Co. v. Ohio Gear*, 462 F.3d 701, 706 (7th Cir. 2006) (citation omitted). Here, the district court found that Blue failed to show good cause

for the extension of time he requested on the date his response to Hartford's summary judgment motion was due.

Blue contends that he should have been granted additional time to file his response because he lacked necessary discovery at the time the response was due. Although Blue now relies on Luddy's deposition as the missing piece of discovery, Hartford filed Luddy's initial affidavit in March. Moreover, Blue does not articulate why not having Luddy's deposition prevented him from filing any response at all. Although it may be true that the missing depositions would have been helpful to Blue, he does not show good cause as required by Rule 6(b).

Blue claims that he reached out to Hartford to set deposition dates for Luddy just days after Hartford filed its motion for summary judgment as to the bad faith claims. He alleges that Hartford was uncooperative and refused to provide dates that Luddy would be available. Even assuming these claims are true, Blue made no attempt to involve the court in obtaining Hartford's cooperation. On May 4, the parties scheduled Luddy's deposition for May 19, ten days after Blue's deadline for filing his response. Despite this timing, Blue did not seek an extension of time from the court. Blue missed his May 9 deadline, and when he requested an extension of time, he did not mention that he needed additional discovery. Instead, his counsel cited a recent surgery as the reason for his request. The district court granted a two-day extension. On the second day, Blue requested

an additional extension and only then cited his need for discovery.

Rule 6(b)(1) provides a district court with discretion to grant or deny a request for an extension of time. *See* Fed. R. Civ. P. 6(b)(1). In reviewing the district court's decision "we look not just at the request itself but also at what led up to the request." *Spears v. City of Indianapolis*, 74 F.3d 153, 157 (7th Cir. 1996). In *Spears*, this court upheld the denial of a request for an extension of time to file a response to a motion for summary judgment twenty-four hours late. *Id.* at 157-58. The district court record in *Spears* revealed that the case had been plagued with multiple extensions and a last-minute discovery attempt resembling a "fishing expedition." *Id*. at 158. More importantly, the court recognized that many of the delays could have been prevented had the parties involved not waited until the last minute to gather their materials. *Id*. at 157. Though sympathetic to the parties, the court reasoned that district courts have an interest in keeping litigation moving forward and that maintaining respect for set deadlines is essential to achieving that goal. *Id*. at 157-58; *see also Yancick v. Hanna Steel Corp.*, 653 F.3d 532, 538-39 (7th Cir. 2011) (finding no abuse of discretion where a party filed a motion without exhibits, and the court denied the opportunity to file exhibits after the deadline had passed).

Here too, Blue's counsel had requested several extensions throughout the course of the litigation. Though presumably the events leading up to each extension were beyond his control, the inescapable fact is that he

required extensions because he waited until the last minute to begin working on his motions. Blue knew about Luddy on March 17, yet made no attempt to depose him until late April. Hartford also disclosed Davis in its initial disclosures. Although the depositions were scheduled for a date after his responsive pleading was due, Blue made no attempt to seek relief from the court. In fact, his initial request for an extension did not even mention the need for Luddy's or Davis's deposition. Blue argues that Luddy was not initially disclosed, but he offers no explanation for his delay in requesting his deposition until late April, nor does he explain why he did not seek an extension of time on May 4, when he knew Luddy's deposition was scheduled for May 19, after his responsive deadline would pass.

Although the gravamen of Hartford's summary judgment motion focused on its lack of bad faith in applying the incorrect policy standard, it also discussed the evidence it relied on in determining that Blue's LTD benefits should be discontinued under the "any occupation" standard. Blue relies on a lack of discovery regarding the "wrong policy" theory, but his complaint asserted bad faith in Hartford's application of the (incorrect) "any occupation" standard. He offers no explanation for why he was unable to file a responsive motion addressing his arguments relating to bad faith in the application of the "any occupation" standard, even if he was unable to fully address the bad faith claim based on the use of the incorrect policy.

Although Blue relies on *Deere* to show that the district court abused its discretion, that case is inapposite. *See*

*Deere*, 462 F.3d at 705-07. In *Deere*, the plaintiff did not file a Rule 56(f) motion when it was clear that the parties' expert witness deposition dispute would not be resolved prior to the expiration of its deadline to respond to the pending motion for summary judgment. *Id.* at 706. When the plaintiff did not file a timely response, the court invoked a local rule (C.D. Ill. R. 7.1(D)(2)), which provides that a failure to respond to a motion for summary judgment within the requisite time period will be deemed an admission of the motion. *Id.* at 705. In reviewing the district court's decision, we found that the court abused its discretion in applying the local rule because of the unique case history at play. *Id.* at 706-07. Initially, the district court had agreed that the disputed expert witness discovery was necessary to the plaintiff's response to the motion for summary judgment. *Id.* at 707. Then, the defendants filed a motion to enlarge the previously extended time to take the expert's deposition, and the district court did not decide that motion in a timely fashion. *Id.* More importantly, there were several relevant, pending motions that the court left unaddressed. *Id.* "[T]he court proceeded to invoke the local rule, treat the facts as admitted, and enter summary judgment—even though the stack of undecided procedural motions included ones targeting the disputed expert discovery that the court had previously determined was a predicate" to the plaintiff's response to the motion for summary judgment. *Id.* We determined that the history of the motion practice, much of which was unresolved, rendered the district court's grant of summary judgment on the basis of pro-

cedural default an abuse of discretion. *Id*. In this case, however, the district court was timely in its rulings, and there were no material motions pending when it granted summary judgment. Moreover, the magistrate judge was very involved with the parties and keenly aware of the procedural history before him. Thus, viewing the record as a whole, there is no evidence to suggest that the district court abused its discretion in denying Blue's motion for an extension of his response deadline.

## B.  Summary Judgment

Having concluded that the district court did not err in denying Blue's motion, we must now review the court's grant of summary judgment for Hartford as to Blue's bad faith claim. We review the district court's grant of summary judgment de novo. *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006). The district court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court construes all facts and draws all reasonable inferences in the light most favorable to the non-moving party. *Omnicare, Inc. v. UnitedHealth Group, Inc.*, 629 F.3d 697, 705 (7th Cir. 2011). Blue advances two theories regarding his bad faith claim. First, he argues that Hartford revoked his LTD benefits under the "any occupation" standard (leaving aside the fact that it was the wrong standard) in bad faith. Next, he argues that Hartford applied the incorrect standard in bad faith.

Under Wisconsin law, to prove a bad faith denial of benefits claim, a plaintiff must show: (1) "the absence of a reasonable basis for denying benefits of the policy," and (2) "the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim." *Anderson v. Cont'l Ins. Co.*, 271 N.W.2d 368, 376 (Wis. 1978). The second part of the bad faith test is subjective and calls for an examination of whether the insurer knew or should have known that it had no reasonable basis to deny the claim. *Brethorst v. Allstate Prop. & Cas. Ins. Co.*, 798 N.W.2d 467, 475 (Wis. 2011). Although Wisconsin courts have not explicitly addressed whether an honest mistake can be considered reckless disregard, the court in *Anderson* explained that "bad faith is the absence of honest, intelligent action or consideration based upon a knowledge of the facts and circumstances upon which a decision in respect to liability is predicated." *Anderson*, 271 N.W.2d at 377.

### 1. Denial of benefits under the "any occupation" standard

Hartford demonstrated a reasonable basis for denying Blue benefits under the "any occupation" standard, and Blue did not present any evidence in the district court to the contrary. Although the district court did not explicitly conclude that Hartford would have had a reasonable basis to deny Blue's benefits under the "any occupation" standard, its opinion implies that one would have existed had the "any occupation" standard been the correct standard for Hartford to apply.

Hartford's decision to withhold benefits was based on a report from Blue's primary care provider, Maureen Van Dinter, who believed that Blue was capable of full-time light or sedentary work. After Hartford received that report, it completed an employability analysis and identified a number of occupations Blue could perform. Hartford also relied on Blue's cardiologist, Dr. Edwin Ferguson, who reported that Blue had "improved cranial nerves" and indicated that Blue's overall condition had improved. After Blue appealed Hartford's decision to discontinue his LTD benefits, Hartford consulted with Dr. Robert Marks, who reported that Blue's medical records showed no abnormal neurological findings or any neurological deficit and that Blue was not physically precluded from performing light-demand work.

Blue contends that the facts show that Hartford's decision to deny his benefits under the incorrect "any occupation" policy was arbitrary and capricious. Although Blue presents the testimony of Mary Torkkola, a Hartford employability analyst, to support his contention, we need not consider this testimony because it was not before the district court. *See Hernandez v. HCH Miller Park Joint Venture*, 418 F.3d 732, 736 (7th Cir. 2005) ("[T]his court may only consider evidence properly presented to the district court . . . ."). Similarly, Blue's citations to the Luddy and Davis depositions are improper. Blue also attempts to discredit Van Dinter, citing sections of her affidavit that seem to contradict the testimony cited by Hartford in support of its motion, but Van Dinter's affidavit was not before the district court. Although Blue filed the Van Dinter affidavit with

his February 2011 motion for summary judgment, the court deemed that motion moot and never admitted those facts. Again, Blue could have made each of these arguments in a responsive pleading, but he did not file one and we cannot consider these arguments in the first instance.

### 2. Application of the incorrect standard

Next, we turn to Blue's second theory of liability on his bad faith claim, which is that Hartford applied the incorrect standard in bad faith. With regard to Hartford's application of the incorrect LTD standard, the district court concluded that a reasonable jury could determine that Hartford did not exercise ordinary care and reasonable diligence when it failed to uncover the amendment to the policy. But the court also determined that Hartford did not know of or recklessly disregard its lack of a reasonable basis in denying the claim.

Even if an insurance company has no reasonable basis for denying benefits, a claimant must also show that the insurer knew of, or recklessly disregarded, the lack of a reasonable basis for the denial in order to establish bad faith on the part of the insurer. *Brown v. Labor & Indus. Review Comm'n*, 671 N.W.2d 279, 288 (Wis. 2003). Here, nothing in the record before the district court showed or could have prompted a reasonable inference that Hartford knew about, or recklessly disregarded, evidence that it was applying the wrong standard to Blue's claim. When Hartford made Blue's original LTD benefits determination in 2001, the "any occupation" standard had been in effect. Hartford did not adopt the "own occupa-

tion" standard for the purpose of LTD benefits until 2002, at which point it made that standard retroactive to 1993. When the Hartford employee reviewing Blue's claim in Georgia requested the relevant documents from the Minneapolis office, she received a policy listing the old "any occupation" standard that was in effect at the time of Hartford's initial approval of Blue's LTD benefits in 2001. There is no evidence that the claim reviewer knew or suspected that the policy was incorrect or incomplete or that the Minneapolis office's failure to send the correct documents was intentional or reckless. There is no issue of material fact that the application of the "any occupation" standard was nothing more than an honest mistake.

Again, Blue attempts to bring in evidence that was not before the district court to discredit the court's grant of summary judgment. This is improper. *See Hernandez*, 418 F.3d at 736. On the record before the district court, there was no evidence to suggest that Hartford's mistake was intentional or that it knew about, or recklessly disregarded, evidence of its mistake. The district court properly granted Hartford's motion for summary judgment on Blue's claim of bad faith.

### 3. Breach of contract claim

Finally, Blue argues that he should have been able to pursue $6,000 in consequential damages in relation to his breach of contract claim. The district court dismissed this claim as moot because Hartford reinstated his benefits and provided back payments. Blue offers no support for his argument.

As an initial matter, this argument is waived. Blue did not assert these damages in March 2011 when Hartford reinstated his benefits, and he did not respond to Hartford's motion for summary judgment, which clearly states that in its view, Blue's contract claims are moot. *See Laborers' Int'l Union of N. Am. v. Caruso*, 197 F.3d 1195, 1197 (7th Cir. 1999) ("We have long refused to consider arguments that were not presented to the district court in response to summary judgment motions." (citations omitted)). Moreover, during Blue's deposition on March 24, 2011, his counsel objected to a line of questioning relating to a breach of contract claim, stating that the only issue remaining in the case was whether Hartford acted in bad faith.

Generally, a plaintiff may recover consequential damages when such damages "are the natural and probable consequences of the breach and were within [the] contemplation of the parties when the contract was made." *Gen. Star Indem. Co. v. Bankr. Estate of Lake Geneva Sugar Shack, Inc.*, 572 N.W.2d 881, 889 (Wis. Ct. App. 1997). Blue offers no argument as to what consequential damages arose from Hartford's termination of his LTD benefits, and he has not shown that any damages were contemplated by the parties. This court has held that a benefit claim becomes moot when it is paid in full and a plaintiff is granted all the relief he seeks. *Pakovich v. Verizon LTD Plan*, 653 F.3d 488, 492 (7th Cir. 2011). In *Pakovich*, we stated that the plaintiff's claim was rendered moot when "the Plan paid Pakovich the benefits she requested in her complaint, including the amount she was owed at the time and the proper

amount going forward. Since Pakovich had received everything she requested in her benefit claim, that claim became moot . . . ." *Id*. Here too, Blue received all the benefits that he sought under the policy. Although Blue seeks consequential damages incurred as a result of his lack of income, he cites no authority to show that he is entitled to seek consequential damages even though he did not dispute the mootness of the contract claim.

### 4.  Dismissal of Blue's 59(e) motion

Blue does not actually argue that his Rule 59(e) motion was improperly denied, but suggestions of this argument are peppered throughout his brief. Regardless, this claim is meritless. We review a district court's denial of a motion to amend judgment under Rule 59(e) for abuse of discretion. *Bordelon v. Chi. Sch. Reform Bd. of Trs.*, 233 F.3d 524, 529 (7th Cir. 2000).

To prevail on a Rule 59(e) motion to amend judgment, a party must "clearly establish" (1) that the court committed a manifest error of law or fact, or (2) that newly discovered evidence precluded entry of judgment. *Harrington v. City of Chicago*, 433 F.3d 542, 546 (7th Cir. 2006). Here, Blue argued that he should have been allowed to seek discovery and that the district court should not have granted the motion for summary judgment without giving him an opportunity to be heard. This does not amount to a manifest error of law or fact, and the district court acted within its discretion in denying Blue's Rule 59(e) motion.

### III. Conclusion

For the foregoing reasons, we AFFIRM the district court's denial of Blue's motion for an extension of time and AFFIRM the district court's grant of summary judgment in Hartford's favor on Blue's breach of contract and bad faith claims.