NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit
Chicago, Illinois 60604**

Submitted February 21, 2013[*]
Decided April 23, 2013

**Before**

FRANK H. EASTERBROOK, *Chief Judge*

WILLIAM J. BAUER, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 12-2061

| | |
|---|---|
| PAMELA SUE ROHLER,<br>    *Plaintiff-Appellant,*<br><br>    *v.*<br><br>ROLLS-ROYCE CORPORATION and<br>ROLLS-ROYCE NORTH AMERICA, INC.,<br>    *Defendants-Appellees.* | Appeal from the United States District<br>Court for the Southern District of Indiana,<br>Indianapolis Division.<br><br>No. 1:10-cv-0254-TWP-TAB<br><br>Tanya Walton Pratt,<br>*Judge.* |

**O R D E R**

Pamela Rohler appeals the grant of summary judgment against her in this employment discrimination suit against the Rolls-Royce Corporation. We affirm.

We review the facts in the light reasonably most favorable to Rohler. *Coleman v. Donahoe*, 667 F.3d 835, 842 (7th Cir. 2012). Rohler has attached several documents to her brief

---

[*]After examining the parties' briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(C).

that are not part of the district court record, and we will not consider them. *See* FED. R. APP. P. 10(a); *United States v. Raymond*, 228 F.3d 804, 809 n.5 (7th Cir. 2000)).

Rohler has an accounting degree and has worked for Rolls-Royce since 1999. In 2006 she joined a division of the company that manufactures gas-turbine engines for military aircraft and became a manager of "life-cycle costs," which are costs related to the estimated repair work that the engines will require over time. To forecast these costs, Rohler used reliability data on the engines—data prepared by an engineer whom Rohler worked alongside. In 2007 the engineer left Rolls-Royce, which then decided to merge this vacated position and Rohler's into that of a senior manager. For that new position, Rolls-Royce selected Dick Gurley, an engineer with 30 years' experience at the company. We must assume that during the five months preceding Gurley's start date, Rohler—reporting to Gurley—continued supervising most of the group's other employees.

Rohler's working relationship with Gurley worsened after he assumed his new position. Rohler continued to perform some of her previous responsibilities, but because Gurley now directly supervised all the group's employees, Rohler no longer had managerial responsibilities of her own. A month later, in a meeting with Gurley and a human resources manager, Rohler stated that Rolls-Royce had engaged in sex discrimination by giving the combined position to Gurley instead of her. She soon filed a discrimination complaint with the EEOC.

Over the next several months, Rohler continued to struggle with the idea of being supervised by Gurley. When Gurley asked for a progress report on a project, Rohler told him that there was no need because "he didn't know anything about the project." When Gurley asked to see certain documents before they were sent to David Dial (his supervisor) or other persons, Rohler brushed off the requests and told him that wouldn't be necessary. At other times she would tell Gurley that she did not want or need his supervision. Rohler told a human resources manager that she was refusing to respond to some of Gurley's requests because she did not want Gurley to succeed. (Rohler has never disputed these accounts.)

Rohler's behavior resulted in criticisms from her supervisors. Gurley prepared a midyear performance review that panned her communications skills and attitude but ultimately concluded that, as a whole, her job performance met expectations. A month later, Dial met with Rohler and reprimanded her for her insubordinate behavior. In response, Rohler asked for a different position in the company, and she was transferred to Rolls-Royce's parent company one month later.

Rohler filed a complaint in district court maintaining that Gurley had received the newly created position because of his sex and that the defendants retaliated against her when

she complained of the discrimination by placing her on a "termination list" and by criticizing her job performance. She also claimed that the defendants had violated the Equal Pay Act, 29 U.S.C. § 206(d)(1), by paying Gurley more than her when she managed the group during Gurley's transition.

The district court granted summary judgment for Rolls-Royce. The court concluded that the new position had required an engineering background, and so Rolls-Royce had a nondiscriminatory basis for selecting Gurley, who had an engineering degree, over Rohler, who did not. Nor could Rohler proceed on her retaliation claim, the court concluded, because she had failed to present evidence that the actions Rolls-Royce took were intended to be retaliatory. Additionally, the court decided that Rohler could not proceed with her Equal Pay Act claim for two reasons: Rohler and Gurley had not performed jobs requiring "equal skill, effort, and responsibility," and Rohler failed to provide evidence that Gurley was paid more than she.

On appeal, Rohler first challenges the district court's conclusion that she did not prove her sex discrimination claim, insisting that she could have convinced a jury of discrimination using either the direct or indirect methods of proof. But her response to the defendants' motion for summary judgment did not present a direct method argument to the district court, so we will not consider this argument on appeal. *See Blue v. Hartford Life & Accident Ins. Co.*, 698 F.3d 587, 597 (7th Cir. 2012). In any event, she has provided no direct evidence that Gurley was selected because of his sex.

As for the indirect method, Rohler maintains on appeal that the combined position never required an engineering degree, and that the defendants fabricated the requirement after the fact. But even if a jury concluded that Rohler had been qualified for the position, it would make no difference; she failed to show that she was passed over for the job because of her sex. On the contrary, she says that a senior executive at Rolls-Royce told her that Gurley got the job because of a need to reassign him out of another managerial position where his supposed incompetence was harming the career of another employee. But a personnel decision does not violate Title VII merely by being unwise or bizarre. *Hobbs v. City of Chicago*, 573 F.3d 454, 463 (7th Cir. 2009); *Pignato v. Am. Trans Air., Inc.*, 14 F.3d 342, 350 (7th Cir. 1994). Rohler counters that Gurley's transfer *was* sex discrimination because it was done to protect the career of another male employee. But Rohler waived this theory by not presenting it to the district court, *see Blue*, 698 F.3d at 597, and in any event, has provided no evidence whatsoever that Rolls-Royce's decision was motivated by the other employee's sex.

Next, Rohler restates her retaliation claim, insisting that her loss of managerial duties, her placement on the termination list, Gurley's criticisms in her midyear job review, and Dial's reprimand were all intended to punish her for pursuing her sex-discrimination claim. But the

district court properly granted summary judgment. The loss of managerial duties could not have been retaliatory because it occurred before Rohler engaged in a "protected activity." *See, e.g., Abuelyaman v. Ill. State Univ.*, 667 F.3d 800, 814–15 (7th Cir. 2011); *Nagle v. Vill. of Calumet Park*, 554 F.3d 1106, 1119 (7th Cir. 2009). Rohler insists that this is wrong, and that she engaged in a protected activity several months earlier, when she told a human-resources official that she believed she had been a victim of sex discrimination. But her response to the defendants' motion for summary judgment contained no evidence that this conversation with the official ever happened. As for the purported retaliation by Gurley and Dial, " it is not clear whether a negative performance review, standing alone, can ever constitute a materially adverse employment action in the retaliation context." *See Brown v. Advocate S. Suburban Hosp.*, 700 F.3d 1101, 1108 (7th Cir. 2012). Furthermore, Rohler presented no evidence that the criticisms were causally linked to her EEOC charge. *See Gates v. Caterpillar, Inc.*, 513 F.3d 680, 686–87 (7th Cir. 2008). We think any reasonable jury would conclude that the criticism (which came several months after her filing) was provoked by her willful and repeated insubordination, the evidence of which is not disputed. *See, e.g., id.; Ajayi v. Aramark Bus. Servs.*, 336 F.3d 520, 531 (7th Cir. 2003).

Although Rohler's placement on a "termination list" did occur shortly after she filed the EEOC charge, "temporal proximity between an employee's protected activity and an adverse employment action is rarely sufficient to show that the former caused the latter." *Coleman,* 667 F.3d at 860. And in any event, there was no adverse employment action: The threat of termination (a very indirect threat, even if we assume at this stage Rohler's inclusion on the list was intentional) was unfulfilled, and an empty threat is not a materially adverse employment action. *See Nagle,* 554 F.3d at 1120–21 (citing *Burlington Northern & Santa Fe R.R. Co. v. White,* 548 U.S. 53 (2006)).

Rohler also challenges the grant of summary judgment for the defendants on her Equal Pay Act claim but addresses only one of the two, independent, reasons that the district court. Because Rohler did not address the court's conclusion that she and Gurley never held positions requiring "equal skill, effort, and responsibility," 29 U.S.C. § 206(d)(1), she waived the issue, *see Maher v. City of Chicago*, 547 F.3d 817, 821 (7th Cir. 2008).

Finally Rohler challenges the dismissal of Rolls-Royce North America, Rolls-Royce Corporation's parent company, from the suit, insisting that the two companies operated as a single entity for purposes of Title VII, and so the parent company is liable for its subsidiary's actions. But because the subsidiary bears no liability, the point is academic.

AFFIRMED.