NOT RECOMMENDED FOR PUBLICATION
File Name: 13a0722n.06

No. 12-2540

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
*Aug 06, 2013*
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| ALLEN DUNNING, M.D., | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| WAR MEMORIAL HOSPITAL, | ) | THE WESTERN DISTRICT OF |
| | ) | MICHIGAN |
| Defendant-Appellee. | ) | |
| | ) | |
| | ) | OPINION |

BEFORE:  ROGERS and DONALD, Circuit Judges; and ANDERSON, District Judge.[*]

**Bernice B. Donald, Circuit Judge.**  Dr. Allen Dunning brought suit in federal court against

the Chippewa County War Memorial Hospital ("the hospital"), challenging the hospital's actions

restricting Dunning's privileges as a staff physician there under the Rehabilitation Act of 1973; Title

III of the Americans with Disabilities Act; and the Michigan Persons with Disabilities Civil Rights

Act.  Dunning's complaint also alleged breach of contract, violation of the Sherman Antitrust Act,

and tortious interference with advantageous business relationships.  After granting Dunning two

extensions of time to respond to the hospital's motion for summary judgment, the district court

denied Dunning's request for additional time and, without the benefit of briefing by Dunning's

---

[*]The Honorable S. Thomas Anderson, United States District Judge for the Western District
of Tennessee, sitting by designation.

counsel, granted the hospital summary judgment on the merits of all of Dunning's claims. The court

also awarded hospital attorneys' fees and costs associated with the defense of certain claims, under

the Health Care Quality Improvement Act. Dunning timely filed the present appeal, challenging the

denial of his extension motion, the grant of summary judgment, and the award of fees and costs. For

the following reasons, we AFFIRM the decision of the district court.

**I.**

**A. Factual Background**

At the time of the complaint, Allen Dunning, M.D. was a general surgeon at Chippewa

County War Memorial Hospital. Over time, the hospital's Medical Executive Committee ("the

MEC") developed concerns about certain aspects of Dr. Dunning's medical practice, which it

expressed in a letter to Dunning dated October 21, 2009. The MEC placed Dunning under summary

suspension, imposing restrictions on his surgical practice, including a ban on his accepting patients

from the hospital's emergency room. Soon thereafter, Dunning and the MEC entered into a

memorandum of understanding, to be effective for ninety days while a peer review process was

completed. Under this agreement, the previously imposed restrictions were modified and Dunning

agreed to fully cooperate with the MEC's review process.

Upon completion of outside review, the MEC recommended to the hospital board that

certain restrictions on Dunning's practice at the hospital be made permanent and that he be required

to obtain an outside psychological evaluation and follow-up counseling. Apparently at Dunning's

request, the MEC scheduled a hearing on the matter for March 15, 16 and 18, 2010. According to the resulting Fair Hearing Panel Report, the hearing panel reviewed relevant documents and heard 22 hours of testimony from hospital staff and Dunning. Witnesses were called by counsel for both MEC and Dunning. Concluding that Dunning had "apparent obstacles to overcome in his relationships with many hospital personnel," the panel recommended that Dunning obtain professional evaluation for the purpose of improving his interpersonal skills but that he be allowed to resume inpatient consultations and surgical interventions, subject to certain restrictions. The panel further recommended that, upon successful completion of its recommended transitional plan, Dunning's surgical privileges be reinstated without restriction.

The hospital board reviewed the panel's report and recommendations on June 4, 2010. The board decided that Dunning must "obtain professional evaluation at a facility, mutually agreed upon with the MEC, for the purpose of improving [his] interpersonal skills, improving relationships with nursing and ancillary staff, and to improve [his] ability to collaborate with [his] colleagues." The board provided Dunning with two MEC recommended programs as options for completing the professional evaluation. Upon successful completion of the evaluation, Dunning would then be eligible to continue exercising his clinical privileges subject to certain restrictions. The board indicated that the MEC would subsequently conduct an ongoing evaluation to determine Dunning's eligibility for reinstatement of unrestricted surgical privileges.

Although Dunning appealed the board's decision, he nonetheless had the required evaluation done by a Dr. Siegel at one of the facilities approved by the hospital board. The board met on July

19, 2010 to consider Dunning's appeal. Its sole focus was on the fairness of of the process followed by the MEC in its review of Dunning's clinical privileges. The board found that the process and procedures had been fundamentally fair and, on that ground, the board upheld its adoption of the MEC's recommendations and declared the recommendations effective immediately and Dunning's administrative remedies exhausted. The board's letter announcing its decision noted the following:

> The Board is aware that you have already obtained a professional review consistent with the MEC's recommendation. However, the Board is disappointed in your decision to not release the results of that evaluation to the MEC. Please recognize that the Board will consider broadening your clinical privileges only if the doubts concerning your practice and interrelationships are resolved. Those doubts cannot be resolved if relevant information is not made available for consideration.

In a letter dated August 11, 2010, the board reminded Dunning that he needed to obtain and submit a professional evaluation prior to November 1, 2010, "so there is time to resolve concerns before your clinical privileges expire" on December 31. Dunning claims that he did not allow the submission to the MEC of Dr. Siegel's evaluation because he "learned of irregularities in the examination process." Instead, Dunning obtained an independent evaluation from Professor Phillip Margolis from the University of Michigan Hospital System and submitted the resulting report to the MEC in October 2010. The Margolis evaluation did not conform to the board's requirement that the evaluation be from one of two MEC-approved facilities. The MEC notified Dunning in a letter dated December 21, 2010 that "[t]ime is running out and if you do not provide the report, or if you provide it without a reasonable time for the MEC to act on it, your privileges will lapse" on December 31, 2010.

**B. Procedural Background**

On December 30, 2010, one day before his privileges were to lapse, Dunning filed his initial complaint in district court. He filed an amended complaint on May 18, 2011. Dunning alleged that the hospital had discriminated against him because of his disabilities—a personality disorder and impaired hearing—in violation the Rehabilitation Act of 1973. He further alleged discrimination under Title III of the Americans with Disabilities Act and the Michigan Persons with Disabilities Civil Rights Act. He also asserted the following ancillary claims against the hospital: breach of contract and estoppel on grounds that the hospital had violated its own medical staff by-laws; violation of the Sherman Antitrust Act by reducing "competition among general surgeons in the relevant geographic market by excluding Plaintiff from that market"; and "tortious [interference] with advantageous business relatio[n]ships."

On April 24, 2012, the hospital filed a motion to dismiss, and alternatively to reset the scheduled trial date of May 21, 2012 and associated dispositive motion deadlines, because of Plaintiff's failure to submit the required Fed. R. Civ. P. 26(a) disclosures by the court's deadline of April 29, 2011. The court declined to dismiss but did reset the discovery completion deadline to July 31, 2012, the dispositive motion deadline to August 27, 2012, and the trial date to November 5, 2012.

On July 2, 2012, the hospital filed a motion to compel discovery, stating that Dunning had failed to respond to interrogatories and requests for production, as well as requests for deposition

dates. In Dunning's response to the motion he pointed to "the illness and injury of Plaintiff's counsel, and to counsel's resulting absence from his practice" as the reason for the continued delay. The magistrate judge subsequently issued a new scheduling order, setting a deadline of August 6, 2012 for Dunning to respond to all outstanding discovery requests and to provide deposition dates. The scheduling order provided a discovery cutoff of September 12, 2012, a dispositive motion deadline of September 26, 2012, and a dispositive motion response deadline of October 8, 2012. It reset the trial for December 10, 2012.

On August 27, 2012, the hospital filed a second motion to compel discovery. The hospital stated that Dunning had still not responded to written discovery requests and that no deposition dates had been scheduled. In response, Dunning's counsel cited his continuing health issues, requested a modification to the current scheduling order, and intimated that substitute counsel might be necessary. On August 30, 2012, the magistrate judge indicated that the court would entertain a motion to dismiss for failure to comply with the court's scheduling orders, and it set a deadline for that motion of September 13 and a response deadline of September 28, 2012.

On September 7, the hospital filed a motion to dismiss pursuant to Fed. R. Civ. P. 37 and 41, followed by a Rule 12(b)(6) motion to dismiss, and alternatively for summary judgment, on September 26. Dunning filed a response to the September 7 motion on September 28, 2012.

On October 4, 2012, Dunning filed a motion for a one-week extension to file his response to the second motion to dismiss. Dunning's counsel explained that he had been engaged in

interviewing co-counsel for this case and responding to the first motion to dismiss. The court granted the motion for additional time, extending the response deadline at least a week to October 18, 2012.

On October 17, 2012, Dunning filed a second motion for extension of time to respond to the second dispositive motion. Dunning's counsel stated that "[c]onsolidation and making patient references consistent to assure readability, while redacting to maintain patient confidentiality, is taking more time than anticipated and is slowing completion and client/co-counsel review." The court granted this request on that same day, extending the response deadline to October 22, 2012.

On October 22, 2012, Dunning's counsel filed a third motion for extension of time to file his response to the hospital's second dispositive motion. Dunning's counsel stated that on the response due date he had become aware that a substantial portion of the work, completed over the weekend and saved to a portable storage device, was corrupted and unrecoverable. He requested two additional days to file the response. The court issued an order the next day denying the motion.

On October 26, 2012, the court granted the hospital's motion for summary judgment and ruled that the hospital was entitled to costs and attorneys' fees, pursuant to the Health Care Quality Improvement Act (HCQIA), 42 U.S.C. §§ 11111–11115 (2011), for its defense as to those claims subject to immunity under the HCQIA.

The present appeal was filed on November 26, 2012.

## II. Analysis

Dunning claims that the district court abused its discretion in denying his third motion to extend the deadline for response to the hospital's summary judgment motion. Dunning also challenges the court's grant of summary judgment as to his claims brought under the Rehabilitation Act of 1973 and the Americans with Disabilities Act, leaving unchallenged the dismissal of the majority of the claims asserted in his complaint. He further claims that the district court abused its discretion in awarding costs and fees to the hospital under the HCQIA. We address each of these issues on appeal in turn.

## A. Motion for Extension of Time

We review for abuse of discretion a district court's decision as to whether to amend its scheduling order to allow a late filing. *Andretti v. Borla Performance Indus., Inc.*, 426 F.3d 824, 830 (6th Cir. 2005); *see also Blue v. Hartford Life & Acc. Ins. Co.*, 698 F.3d 587, 593 (7th Cir. 2012). Under this standard, we will reverse the district court's ruling only if we have a definite and firm conviction that it has committed a clear error of judgment. *Great Lakes Exploration Grp., LLC v. Unidentified Wrecked & Abandoned Sailing Vessel*, 522 F.3d 682, 687 (6th Cir. 2008) (citing *Link v. Wabash R. Co.,* 370 U.S. 626, 632 (1962)).

The facts surrounding the denial of Dunning's third motion for an extension of time to respond to the hospital's motion for summary judgment are summarized as follows:

**September 7, 2012**: Hospital files motion to dismiss pursuant to Fed. R. Civ. P. 37 and 41.

**September 26, 2012**: Hospital files Rule 12(b)(6) motion to dismiss and, alternatively, for summary judgment.

**September 28, 2012**: Dunning files response to the September 7 motion.

**October 4, 2012**: Dunning files motion for an extension of time (7 days) to file his response to the summary judgment motion. **Motion granted October 4.**

**October 17, 2012**: Dunning files second motion for extension of time (4 days) to respond to the summary judgment motion. **Motion granted October 17.**

**October 22, 2012**: Dunning files third motion for extension of time (2 days). **Motion denied October 23.**

The court did not explain the grounds for its denial, other than to state that "Plaintiff has filed yet again, another motion for extension of time to file a response to Defendant's summary judgment motion. Plaintiff's motion is DENIED."

Dunning asserts that the denial of his motion for an additional two days was an abuse of the court's discretion because it effectively punished Dunning for his attorney's shortcomings. This, in Dunning's view, is contrary to this court's statement in *Buck v. U.S. Dep't. of Agric.*, that dismissal of an action for an attorney's failure to comply is a harsh sanction appropriate "only in extreme situations showing a clear record of delay or contumacious conduct by the plaintiff." 960 F.2d 603, 608 (6th Cir. 1992) (internal quotation marks omitted).

This reliance on *Buck* is misplaced. In *Buck*, after repeated failures by plaintiff's counsel to comply with the court's orders, including an order to show cause why the action should not be dismissed for failure to submit a required jurisdictional statement, the court dismissed for lack of prosecution. *Id.* at 605. On review, this court, noting its general reluctance to penalize a party for his attorney's failings, nonetheless affirmed the dismissal, holding that it was neither unfair nor an abuse of discretion. *Id.* at 609.

The trial court in this case did not dismiss for lack of prosecution, although it had a motion to do so under Rule 41(b) before it. Rather, it decided that two extensions of time to respond to the hospital's summary judgment motion were enough and proceeded to rule on the merits of the motion without the benefit of an opposing brief. In doing so, the court was well within its discretion to manage its docket. *United States v. Van Dyke*, 605 F.2d 220, 227 (6th Cir. 1979). "Matters of trial management are for the district judge and we intervene only when it is apparent the judge has acted unreasonably." *Blue,* 698 F.3d at 593 (citation omitted) (holding that the district court did not abuse its discretion in denying plaintiff's motion for a second extension of time to respond to summary judgment motion); *see also Ginett v. Fed. Express Corp.*, 166 F.3d 1213 (6th Cir. 1998) (unpublished) (finding trial court did not abuse its discretion in denying motion to extend time to respond to motion for summary judgment by fourteen days, "[b]ecause of the considerable deference this court gives the district court's scheduling decisions"). As one of our sister courts pointedly put it when reviewing the lower court's denial of the plaintiff's request for one more day to respond to a motion for summary judgment: "We live in a world of deadlines. . . . A good judge sets deadlines,

and the judge has a right to assume that deadlines will be honored." *Spears v. City of Indianapolis*, 74 F.3d 153, 157 (7th Cir. 1996).

The trial court's denial here was undeniably harsh medicine. It would have been preferable, perhaps, if the court had issued an explicit declaration that, after the second extension had been granted, no further extensions would be considered. This, however, is not our call to make. The question at issue is not whether we might have ruled differently but, rather, whether the district court abused its discretion under the circumstances. Given plaintiff's counsel's continuous failure to adhere to the court's scheduling orders and the resulting repeated motions to compel and show cause orders, we cannot say that the court's refusal to grant counsel's third request for extension of time was an abuse of the court's discretion.

## B. Summary Judgment

A district court's grant of summary judgment is reviewed *de novo. Binay v. Bettendorf*, 601 F.3d 640, 652 (6th Cir. 2010). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The reviewing court must view the evidence and justifiable inferences based on facts in a light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 460 (6th Cir. 2001).

The party seeking summary judgment has the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions and affidavits which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The nonmoving party must "go beyond the pleadings" and support its opposition to the motion by citing to specific evidentiary materials in the record. *Celotex*, 477 U.S. at 324. Since this Court reviews the district court's grant of summary judgment *de novo*, it must make its own independent assessment as to whether there is a genuine issue of material fact that precludes summary judgment.

ADA Claim

Using largely boilerplate language, Dunning's amended complaint alleges that the hospital intentionally discriminated against him on the basis of his disability, in violation of Title III of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12182. The hospital's summary judgment motion asserts that "plaintiff has failed to create a genuine issue of material fact as to any of the six counts in Plaintiff's Amended Complaint" and that "Plaintiff has offered no evidence in this case outside of the pleadings filed with this court."

Under the ADA, "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or

accommodations of any place of public accommodation by any person who owns, leases (or leases

to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). In order to establish a

claim under the ADA, the plaintiff must show that (a) he was disabled, (b) he was otherwise

qualified to perform the essential functions of the job with or without reasonable accommodation,

and (c) he suffered an adverse employment action because of a disability. *Monette v. Elec. Data Sys.*

*Corp.*, 90 F.3d 1173, 1178 (6th Cir.1996), *abrogated on other grounds by Lewis v. Humboldt*

*Acquisition Corp.*, 681 F.3d 312 (6th Cir. 2011) (en banc). The alleged discrimination must have

been a "but-for" cause of the employer's adverse decision. *Lewis*, 681 F.3d at 321.

Dunning's complaint claims two disabilities: 1) a hearing impairment and 2) a personality

disorder. Dunning appears to have abandoned his claim of discrimination based upon a hearing

impairment, as it is not mentioned in his brief.

Understanding the second of the two claimed disabilities requires some scrutiny. The

amended complaint contains a single sentence describing the disability: "Plaintiff is an individual

with a disability by virtue of being regarded as having an impairment by Defendant, specifically the

personality disorder disclosed by Dr. Siegel to WMH Chief of Staff Dr. O'Connor in June, 2010."

Viewing this statement in light of Dunning's other statements regarding the "serious irregularities

in the evaluation process," and "false statements" upon which the evaluation was based, as well as

the assertion that "the medical examination was unnecessary and not supported by the findings of

fact by [the] hearing panel," we must conclude that Dunning does not believe that he has such a

disability at all, the disability existing only "by virtue of being regarded as having an impairment" by the hospital.

Dunning's allegations as to the hospital's discriminatory actions are equally abstruse. The complaint appears to allege discriminatory intent in the hospital's requirement that he undergo an unnecessary medical examination and its "knowingly making false statements to Dr. Siegel concerning Plaintiff and by reasserting allegations about Plaintiff which had been disproved during a hearing."

Both the first and third prong of the *Monette* analysis are problematic for Dunning. First, Dunning fails to establish that he has such a disability. In fact, as we have mentioned, he appears to believe that the personality disorder at issue is entirely a fabrication of Dr. Siegel and the hospital. Equally fatal is the fact that the allegedly discriminatory acts, i.e., mandating an examination and supplying the examining doctor with false information, preceded any knowledge the hospital is alleged to have had regarding the disability, since, according to the complaint, the hospital only learned of the personality disorder from Dr. Siegel after his examination of Dunning. The alleged discrimination could not have been because of a disability of which the hospital was unaware.

Since Dunning failed to establish two of the three elements of a prima facie case of disability discrimination and failed to offer any evidence to support his claims, the district court was correct in finding that there was no dispute of material fact and that the hospital was entitled to judgment as a matter of law.

Rehabilition Act Claim

Dunning makes little effort at distinguishing his discrimination claim under the Rehabilitation Act from his ADA claim. His allegations in support of these two claims are identical.

Section 504 of the Rehabilitation Act of 1973 provides that "No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . ." 29 U.S.C. § 794 (2011). The prima facie case under the Act mirrors that under the ADA, with only one relevant exception: Under the Rehabilitation Act, Plaintiff must show that he was excluded *solely* by reason of his disability. *See Doe v. Salvation Army in U.S.*, 685 F.3d 564, 567 (6th Cir. 2012); *see also Lewis*, 681 F.3d at 315-17. Since we have already established that Dunning failed to state a cognizable claim even under the more liberal "because of" or "but-for" standard, we need not go further in our analysis. The hospital was entitled to summary judgment as to the Rehabilitation Act claim.

### C. Award of Costs and Fees

A district court's decision on whether to award fees and costs and the determination of the amounts awarded, when a federal statute authorizes such an award, is reviewed for abuse of discretion. *Muzquiz v. W.A. Foote Mem'l Hosp., Inc.*, 70 F.3d 422, 432 (6th Cir. 1995).

In its order granting the hospital's motion for summary judgment, the district court also granted the hospital's request for costs and attorneys' fees, pursuant to the HCQIA, for its defense against those claims which were subject to immunity under the HCQIA.

The HCQIA provides limited immunity from suit to the professional review body with respect to the professional review action. 42 U.S.C. § 11111(a)(1) (2011). As to the award of costs and attorneys' fees, the HCQIA provides as follows:

> In any suit brought against a defendant, to the extent that a defendant has met the standards set forth under section 11112(a) of this title and the defendant substantially prevails, the court shall, at the conclusion of the action, award to a substantially prevailing party defending against any such claim the cost of the suit attributable to such claim, including a reasonable attorney's fee, if the claim, or the claimant's conduct during the litigation of the claim, was frivolous, unreasonable, without foundation, or in bad faith. For the purposes of this section, a defendant shall not be considered to have substantially prevailed when the plaintiff obtains an award for damages or permanent injunctive or declaratory relief.

42 U.S.C. § 11113 (2011). Section 11112(a), referenced above, provides the relevant standards for professional review actions:

> For purposes of the protection set forth in section 11111(a) of this title, a professional review action must be taken—
>    (1) in the reasonable belief that the action was in the furtherance of quality health care,
>    (2) after a reasonable effort to obtain the facts of the matter,
>    (3) after adequate notice and hearing procedures are afforded to the physician involved or after such other procedures as are fair to the physician under the circumstances, and
>    (4) in the reasonable belief that the action was warranted by the facts known after such reasonable effort to obtain facts and after meeting the requirement of paragraph (3).

> A professional review action shall be presumed to have met the preceding standards necessary for the protection set out in section 11111(a) of this title unless the presumption is rebutted by a preponderance of the evidence.

42 U.S.C. § 11112(a) (2011).

The district court determined that the hospital was covered by the HCQIA, that its professional review action against Dunning satisfied the standards set forth in § 11112(a), and that the hospital had "substantially prevailed," as required under § 11113. Dunning does not contest these conclusions, and they are supported by the record.

The court further concluded that "Plaintiff's conduct during the litigation [was] unreasonable, as evidenced by the actions, or lack thereof, of Plaintiff's counsel in this case," and that an award of costs and fees was, therefore, justified. Dunning asserts that the court erred in its determination that his counsel's conduct was unreasonable:

> The conduct in question not promptly and fully complying with the July 27 Order – was directly attributable to counsel's health concerns. Counsel attempted to be as candid and forthcoming as he was able to be. There was no intention to prejudice the Defendant, its counsel, or the Court. To punish a plaintiff because of his counsel's health-related conduct imposes an unfair and unreasonable burden on HCQIA plaintiffs and on this Plaintiff in particular.

Whether a party's claim or conduct is frivolous, unreasonable, without foundation, or in bad faith is a question committed to the sound discretion of the district court. *Meyers v. Columbia/HCA Healthcare Corp.*, 341 F.3d 461, 473 (6th Cir. 2003); *see also Addis v. Holy Cross Health Sys. Corp.*, 88 F.3d 482, 486-87 (7th Cir.1996); *Johnson v. Nyack Hosp.*, 964 F.2d 116, 123 (2d Cir. 1992). For the same reasons we deferred to the district court's decision to deny a third request for extension of time, we defer as well to the court's award of costs and fees on grounds that claimant's

conduct, through his counsel, was unreasonable. Even if we may have decided the issue differently under a de novo review, Dunning has failed to demonstrate that the district court abused its discretion by awarding costs and fees in this case.

### III. Conclusion

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment as to Dunning's ADA and Rehabilitation Act claims. We likewise AFFIRM the district court's denial of Dunning's third motion for extension of time to reply to the hospital's motion for summary judgment and its award of costs and attorneys' fees for the hospital's defense against those claims which were subject to immunity under the HCQIA.