RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 24a0119p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────

YVONNE CRADDOCK,

        *Plaintiff-Appellant*,

    *v.*

FEDEX CORPORATE SERVICES, INC.,

        *Defendant-Appellee*.

No. 23-5466

─────────────

Appeal from the United States District Court for the Western District of Tennessee at Memphis.
No. 2:17-cv-02780—Thomas L. Parker, District Judge.

Decided and Filed:  May 22, 2024

Before:  GIBBONS, McKEAGUE, and STRANCH, Circuit Judges.

─────────────

## COUNSEL

**ON BRIEF:**  Mary A. Brown, Grenada, Mississippi, for Appellant.  Charles V. Holmes, Barak J. Babcock, FEDERAL EXPRESS CORPORATION, Memphis, Tennessee, for Appellee.

STRANCH, J., delivered the principal opinion of the court in which GIBBBONS and McKEAGUE, JJ., concurred.  McKEAGUE, J. (pp. 17–19), delivered a separate opinion of the court in which GIBBONS and STRANCH, JJ., concurred.

─────────────

## OPINION

─────────────

JANE B. STRANCH, Circuit Judge.  FedEx Corporate Services terminated Yvonne Craddock's employment following a workplace altercation.  Craddock, who is African American, sued FedEx, alleging that she was terminated because of her race in violation of Title

VII of the Civil Rights Act of 1964. Her claims were submitted to a jury, which concluded that FedEx's reason for termination was pretextual, but that Craddock had failed to demonstrate that FedEx intentionally discriminated against her because of her race. Craddock appeals, arguing that the district court abused its discretion by forcing her to bifurcate the liability and damages portions of her trial and by excluding testimony and evidence pertaining to events post-termination; that some of the court's trial rulings and case management decisions were improper; that the jury verdict form was plainly erroneous; and that cumulatively, these errors warrant reversal of the judgment and remand for a new trial. For the following reasons, we hold that the district court did not abuse its discretion regarding the claims raised by Craddock, and **AFFIRM** the jury's verdict.

## I. BACKGROUND

### A. Facts

Yvonne Craddock began working at FedEx in 1983. She started her FedEx career sorting packages at a facility part-time; over time, she received further training, obtained additional degrees, and transitioned through several different full-time roles. Craddock did not experience problems with supervisors or coworkers in these positions. In April 2015, Craddock became a senior project process analyst in FedEx's Supply Chain Office, where Leanne Scallions served as her manager. Craddock sought and obtained permission from Scallions to adjust her work schedule to care for her mother, who had Alzheimer's disease, including leaving early on Tuesdays.

To help acclimate Craddock to her new role, Scallions assigned her a training partner, Cindy Fischer. Conflicts soon emerged between the two. For example, despite not serving as Craddock's supervisor, Fischer monitored Craddock's office arrival and departure times, for which Fischer ultimately received a verbal warning to stop tracking Craddock's whereabouts.

On December 3, 2015, Craddock went to Fischer's cubicle and asked why she kept emailing Scallions about Craddock's comings and goings. Fischer got upset, began yelling, and then stood up facing Craddock toe-to-toe. The parties dispute what happened next; Craddock says she raised her forearm and "brushed up against" Fischer as Fischer stepped closer to her,

and Fischer says Craddock pushed her.  Later that day, Scallions called and notified Craddock that she was suspended.  Rich Psyzniak, a representative from FedEx's Human Resources department, stated that he called Craddock later that day and spoke with her about the contents of the suspension letter and the underlying incident; Craddock claims this conversation never took place.  On January 27, 2016, Scallions and Psyzniak called Craddock and notified her that FedEx was terminating her for workplace violence.

## B.  Procedural Background

Craddock filed a complaint with the Equal Employment Opportunity Commission, which issued her a right to sue letter on July 24, 2017.  Craddock filed this lawsuit on October 23, 2017, and filed an amended complaint on March 20, 2018, raising, in relevant part, race discrimination, hostile work environment, and retaliation claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*  The district court granted FedEx's motion to dismiss Craddock's libel claim, Family Medical Leave Act claim, 42 U.S.C. § 1981 claim, and spoliation claim, but denied dismissal of her Title VII claims.  After discovery, the court granted FedEx's motion for summary judgment on Craddock's Title VII claims.  We affirmed the dismissals but vacated the grant of summary judgment on Craddock's race discrimination claim and remanded that claim for further proceedings.  *Craddock v. FedEx Corp. Servs., Inc.*, No. 20-5655, 2021 WL 4127078, at *5-7 (6th Cir. Aug. 23, 2021).

The district court set the jury trial for September 2022.  FedEx moved for sanctions against Craddock because she allegedly failed to meet deadlines to produce financial information, such as bank statements or tax returns reflecting her sources of income since leaving FedEx, despite FedEx's repeated requests for this information; and the evidence provided contained conflicting information regarding her damages.  Additionally, FedEx moved to exclude testimony and evidence related to Craddock's dismissed hostile work environment and retaliation claims.  Although the court initially denied a motion from Craddock to continue—that is, to delay—the trial, at the parties' September pretrial conference, the court delayed the trial date until November 2022.  At that conference, Craddock was ordered to supplement her discovery responses regarding damages by October 7.

FedEx renewed its motion for sanctions in October 2022, arguing that "[t]o date, FedEx has not been provided the information that it needs to evaluate and defend against a claim by Craddock for economic damages," and that "Craddock's continued failure to comply with discovery obligations" warranted dismissal with prejudice under Federal Rule of Civil Procedure 41(b) or a prohibition on Craddock presenting any evidence of alleged damages at trial. During a pretrial conference on November 4, the court expressed its concerns with Craddock's failure to produce the relevant financial records, despite FedEx "asking for this information now for years," and concluded that sanctions were appropriate. As to dismissal, the court stated, "it's a very close question about dismissing the case outright," declined to resolve the issue of what sanctions to issue, and converted the November trial date to a status conference. At that conference, the court heard arguments on FedEx's pending motions, and the court expressed concern that it was "struggling . . . with how we can proceed in this case" because Craddock still had not provided FedEx with accurate financial information. The court found that on this record, it "could dismiss this case on the basis of the plaintiff's failure to prosecute her damages claims"; however, because "both sides have everything they need to" litigate "the question of liability," the court could bifurcate the trial and present only the issue of liability to the jury, with the court deciding the issue of damages, if needed. When the court told Craddock that she could choose between dismissal of her case for failure to prosecute or agree to bifurcate the trial, Craddock "favor[ed]" bifurcation.

Following the pretrial conference, the court granted FedEx's motion for sanctions in part and bifurcated the trial "[t]o avoid unfair prejudice to Defendants and misleading the jury on the issue of damages," ordering presentation of the issue of liability to the jury and reserving the issue of damages, if necessary, for a bench trial. It also took the remainder of FedEx's pretrial motion under advisement and stated it would "rule on [relevant] evidentiary issues during trial." Additionally, the court cautioned Craddock "that if her pattern of providing incomplete and inaccurate responses about her financial status and her claim for damages continues, the Court may dismiss the case along with other sanctions."

At a final pretrial conference on March 1, counsel stated that Craddock "didn't think [it] was much of a choice" to bifurcate her case or face dismissal and the court acknowledged that "it

wasn't much of a choice if [Craddock] wanted her case heard." The court then emphasized that Craddock's failure to sufficiently prosecute her case could "easily" justify dismissal of the action, noting that it raised the possibility of bifurcation because it was "trying to give [Craddock] an opportunity to be heard." Counsel responded by pressing Craddock's objection to bifurcation.

Trial commenced on March 27, 2023. The court ruled that evidence related to events postdating Craddock's termination was inadmissible because it was irrelevant. Over the course of the four-day trial, the court called several sidebars where, out of the jury's hearing, it addressed issues with the trial actions of Craddock's counsel. These included: reminders not to solicit irrelevant testimony or testimony about events that postdated termination and attempts to have Craddock's counsel refine her questions to avoid confusing the jury. The court also addressed issues concerning actions by Craddock's counsel, such as her request to have documents she left at home delivered to the courthouse and her claim that she forgot to ask specific questions during her direct examination of Fischer because the court intimidated her.

During the third day of trial, the judge called a sidebar where he raised concerns that Craddock's counsel was "not listening to the rulings" and "just plowing ahead" despite the court's decision "to narrow the focus of this case"; the judge noted he was "going to consider contempt" if counsel continued to disregard his rulings. The court later responded to the comment that Craddock's counsel felt intimidated during a sidebar, stating:

> I want to address that, because in this case your presentation has been very repetitive. You have repeated answers before asking the next question. It has probably at least doubled the length of time this trial needed to take. You have not seemed to understand how to introduce a document as an exhibit. There have been several steps along the way where I felt like I had to intervene because you were standing in front of a jury and you are—you ignored the Court's rulings over and over and over again. Now, whether you understood them, I don't know, but you continued to go up to the witness and try to introduce documents that were well outside what we had already talked about.

The court apologized for making Craddock's counsel feel intimidated and emphasized its "duty . . . to make sure that this is a fair trial, not only to Ms. Craddock, but also to FedEx, and

that the jury hears the evidence that is relevant," and that the court was "trying to do [its] job to make sure that the jury doesn't get confused."

After FedEx rested, the court solicited feedback on the proposed jury instructions. Craddock's counsel asked to email proposed additions to the court; the court responded that proposed instructions "were due two weeks ago," but allowed Craddock's counsel to send them to the court for consideration. The next day, the court largely declined to incorporate Craddock's proposed jury instructions; at the close of the discussion, Craddock's counsel indicated that she was fine with the language proposed by the court. The jury instructions tasked the jurors to evaluate Craddock's racial discrimination claim, in part, as follows:

> If you do not believe Defendant's explanation for this action, then you may infer, but need not infer, that the real reason was that Defendant unlawfully discriminated against Plaintiff because of her race (that is, black). Plaintiff may demonstrate that the reasons given by Defendant are unworthy of belief through evidence showing:
>
> 1. The asserted reasons had no basis in fact;
>
> 2. The asserted reasons did not actually motivate Plaintiff's discharge; or
>
> 3. The asserted reasons were insufficient to motivate Plaintiff's discharge.
>
> Remember that the ultimate burden of proof is with Plaintiff. It is not enough to disbelieve the employer. She must prove, by a preponderance of the evidence, that Defendant took the adverse action against Plaintiff because of her race (that is, Black).

R. 144, Jury Instrs. & Verdict Form, PageID 1672-73.

On March 31, the jury returned a verdict. It found that Craddock had proved, by a preponderance of the evidence, a prima facie case of race discrimination; that FedEx had offered evidence of a legitimate, non-discriminatory reason for terminating Craddock; and that Craddock proved by a preponderance of the evidence that the reason advanced by FedEx for her termination "was a pretext for race discrimination." But on the final question, the jury found that Craddock had not "prove[n] by a preponderance of the evidence that she was the victim of intentional race discrimination when she was terminated." After excusing the jury, the court summarized the verdict, stating, "[s]o, the verdict, again, as to the ultimate question of whether

the termination was based on race discrimination, the answer was no."  The court asked if there were any other matters to address; Craddock's counsel responded "[n]o."  This appeal followed, and we have jurisdiction.  *See* 28 U.S.C. § 1291.

## II.  ANALYSIS

Craddock challenges the court's requirement that she bifurcate the trial or face dismissal of her claims; the court's exclusion of testimony and exhibits postdating termination; some of the court's trial rulings and case management decisions; and the jury verdict form.  She also contends that cumulatively, these errors warrant reversal and remand for a new trial.  We take up each issue below.

### A.  Bifurcation of the Trial or Dismissal

Under Federal Rule of Civil Procedure 42(b), "a court may bifurcate a trial on its own motion."  *Saxion v. Titan-C-Mfg., Inc.*, 86 F.3d 553, 556 (6th Cir. 1996).  Pursuant to the rule, district courts may bifurcate a trial to promote convenience, avoid prejudice, or in service of expedition and economy.  *Id.*  The decision to bifurcate "is dependent on the facts and circumstances of each case." *Id.*  "Sound judicial practice requires that, so far as practicable, the trial court's decision to bifurcate proceedings occur prior to trial."  *Helminski v. Ayerst Labs.*, 766 F.2d 208, 213 n.3 (6th Cir. 1985).  We review a district court's decision to bifurcate trial for abuse of discretion.  *In re Bendectin Litig.*, 857 F.2d 290, 307 (6th Cir. 1988).

"The authority of a federal trial court to dismiss a plaintiff's action with prejudice because of his failure to prosecute cannot seriously be doubted."  *Link v. Wabash R.R. Co.*, 370 U.S. 626, 629 (1962).  Federal Rule of Civil Procedure 41(b) provides for involuntary dismissal of a plaintiff's entire case or individual claims for failure to prosecute or comply with court orders or procedural rules.  *See* Fed. R. Civ. P. 41(b).  Dismissal under this rule "operates as an adjudication on the merits."  *Id.*  "[D]ismissal with prejudice is a harsh remedy not to be employed" indiscriminately.  *Consolidation Coal Co. v. Gooding*, 703 F.2d 230, 232 (6th Cir. 1983).  Still, though "the most severe in the spectrum of sanctions provided by statute or rule," dismissal with prejudice remains "available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those

who might be tempted to such conduct in the absence of such a deterrent." *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976).

After Craddock responded to FedEx's discovery requests with incomplete financial information, FedEx attempted unsuccessfully to depose Craddock three times. On November 3, barely a week before the then-mid-November trial date, Craddock sent FedEx additional financial information to supplement her responses to interrogatories. This information was incomplete, as it did not include information on Craddock's proceeds from "flipping" houses through her real estate business, which FedEx later located through public records. For "years," Craddock failed to provide FedEx with complete and accurate disclosures, which were—as Craddock's counsel acknowledged—necessary for Craddock to prove and for FedEx to defend against claimed damages.

In light of Craddock's persistent failure to abide by her disclosure obligations, the years-long discovery in the case, and the need to efficiently resolve the matter, the court's decision to bifurcate the trial advanced convenience, avoided prejudice, and moved toward resolving the case in an expeditious and economical manner. *Saxion*, 86 F.3d at 556. The court also ordered the bifurcation prior to trial, in accordance with "[s]ound judicial practice." *Helminski*, 766 F.2d at 213 n.3. On this record, we cannot say that the court's decision to bifurcate the case amounted to abuse of its discretion.

Craddock argues that she "had no choice" but to agree to bifurcation, because otherwise, she faced dismissal with prejudice, a "final adjudication on the merits." As discussed, however, the district court's decision to bifurcate was not an abuse of discretion. Because the district court could have rendered its decision without the parties' agreement, *see Saxion*, 86 F.3d at 556, it did not abuse its discretion by taking the extra step of obtaining the parties' responses to that action.

As a final matter, Craddock argues on appeal that bifurcation of the trial forced her to relinquish her right to have a jury determine the amount of damages she could receive had she proven FedEx's liability. The right traces to the Seventh Amendment, which provides that, for all civil suits "at common law," the "right of trial by jury shall be preserved." U.S. Const. amend. VII. We note that where a plaintiff seeks compensatory or punitive damages in a Title

VII suit, she has the right to have a jury decide any fact necessary to determining the amount of damages. *See* 42 U.S.C. § 1981a(c); *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 710-11 (1999) (finding that compensatory relief constitutes legal relief under the Seventh Amendment); *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 352-53 (1998) (holding right to jury trial includes right to determine the amount of statutory damages because such damages are compensatory and punitive).

Crucially, though, for Craddock to succeed on a claim that the district court violated her right to a jury determination of damages, there must have been a determination of liability and resulting damage. The district court did not conduct a bench trial on damages because, as the jury determined, FedEx was not liable to Craddock. Because the district court did not abuse its discretion in bifurcating the trial, and Craddock has not argued that the court's proposed choice prejudiced her during the liability trial, she cannot show that she is entitled to relief regarding damages where the jury found against her on liability. *Cf. Wilson v. Morgan*, 477 F.3d 326, 339-40 (6th Cir. 2007) (finding no error where a district court dismissed a bifurcated set of § 1983 claims against a municipality after a jury found no liability on a separate, predicate set of claims against municipal officers).

**B. Exclusion of Testimony and Exhibits Postdating the Termination**

We review a district court's evidentiary rulings for abuse of discretion. *Barner v. Pilkington N. Am., Inc.*, 399 F.3d 745, 748 (6th Cir. 2005). A district court abuses its discretion when it "relies on clearly erroneous findings of fact, . . . improperly applies the law, . . . or . . . employs an erroneous legal standard." *Beck v. Haik*, 377 F.3d 624, 636 (6th Cir. 2004) (alteration in original) (quoting *United States v. Cline*, 362 F.3d 343, 348 (6th Cir. 2004)), *overruled on other grounds by Adkins v. Wolever*, 554 F.3d 650, 651 (6th Cir. 2009) (en banc). Put differently, we will reverse for abuse of discretion only if "left with the definite and firm conviction that the district court committed a clear error of judgment in the conclusion it reached." *United States v. Johnson*, 79 F.4th 684, 698 (6th Cir. 2023) (quoting *United States v. Dixon*, 413 F.3d 540, 544 (6th Cir. 2005) (cleaned up)).

The district court ruled that the parties could not introduce evidence of events that occurred after Craddock's January 27, 2016 termination.  The court reiterated that it imposed this limitation because the trial was "strictly about [Craddock's] termination."  It emphasized that both the trial court "and the United States Sixth Circuit Court of Appeals have defined this case's scope as being about the termination."  *See Craddock*, 2021 WL 4127078, at *5-*7 (vacating only the district court's summary judgment order on Craddock's race discrimination but not her hostile work environment or retaliation claims).  As a result, the district court reasoned, evidence of post-termination events could not "add[] anything relevant to the jury."  Craddock fails to demonstrate that this ruling rested "on clearly erroneous findings of fact," improper application of the law, or "an erroneous legal standard."  *Beck*, 377 F.3d at 636 (quoting *Cline*, 362 F.3d at 348).  This record does not leave us with "with the definite and firm conviction that the district court committed a clear error of judgment."  *Johnson*, 79 F.4th at 698 (quoting *Dixon*, 413 F.3d at 544).

### C.  Court's Trial Rulings and Case Management

Trial judges enjoy broad discretion in their trial management strategies, for "[i]n a trial by jury in a federal court, the judge is not a mere moderator, but is the governor of the trial for the purpose of assuring its proper conduct and of determining questions of law."  *Quercia v. United States*, 289 U.S. 466, 469 (1933); *see also Dunning v. War Mem'l Hosp.*, 534 F. App'x 326, 331 (6th Cir. 2013) ("Matters of trial management are for the district judge and we intervene only when it is apparent the judge has acted unreasonably.") (quoting *Blue v. Hartford Life & Accident Ins. Co.*, 698 F.3d 587, 593 (7th Cir. 2012)).  Though considerable, this "discretion is not arbitrary and uncontrolled, but judicial, to be exercised in conformity with the standards governing the judicial office."  *Quercia*, 289 U.S. at 470.  Craddock's argument that the judge's conduct prejudiced her before the jury is based on precedent established in appeals of criminal matters.  In the criminal context, we have observed that the critical inquiry is whether "the conduct of the United States District Judge was such as to deny the appellant[] a fair trial."  *United States v. Koenig*, 300 F.2d 377, 380 (6th Cir. 1962).  A record demonstrating "an extremely hostile attitude toward the [appellant] and their counsel by the trial judge" can warrant reversal and remand for a new trial.  *Id.*  When defense counsel failed to object to the court's

demeanor below, we have reversed and remanded when the record reflected that "the conduct of the trial judge must have left the jury with a strong impression of the judge's belief of the defendant's probable guilt such that it was unable to freely perform its function of independent fact finder," because such "conduct amounted to plain error." *United States v. Hickman*, 592 F.2d 931, 936 (6th Cir. 1979).

The record in this civil matter reflects that Craddock's counsel repeatedly attempted to introduce evidence that postdated Craddock's January 27 termination, despite the court's ruling excluding such evidence. Additional sidebars were also undertaken because, for example, counsel struggled to properly introduce exhibits, and left documents she intended to introduce as exhibits at home, necessitating additional sidebars. After Craddock's counsel stated that the court "intimidated" her, the court apologized for making her feel this way, then explained its duty to ensure a fair trial for all parties and that the need to avoid confusing the jury compelled it "to intervene." Craddock argues that though the jury could not hear the court's words during the sidebars, it could observe the court's demeanor and infer the court's frustration with counsel. Invoking *Hickman*, 592 F.2d at 936, Craddock urges that the court's actions constituted plain error warranting reversal and remand.

Although Craddock relies on *Hickman*, 592 F.2d at 936, it is not clear how that decision—a criminal case analyzing the court's conduct against the backdrop of "the fair and impartial trial which the Sixth Amendment to the Constitution guarantees" specifically to criminal defendants—applies to Craddock's civil case. Even if it does, however, Craddock's situation is distinguishable. Unlike in *Hickman*, 592 F.2d at 936, the record does not suggest that "the judge's actions were so unnecessary." Craddock's counsel repeatedly tried to circumvent the court's orders by asking about matters postdating Craddock's termination. She also attempted to pursue open-ended, irrelevant, and repetitive lines of questioning that the district court repeatedly held could confuse the jury. On this record, the court did not abuse its discretion in convening sidebars to address issues with counsel.

**D. Verdict Form**

Craddock asserts two challenges to the verdict form: First, that the final question, whether Craddock proved by a preponderance of the evidence that she was the victim of intentional race discrimination when she terminated, was erroneous; and second, that the jury found in favor of Craddock and the final question of the verdict form provided a standard unsupported by law. We reverse a judgment based on improper jury instructions "if the instructions, viewed as a whole, were confusing, misleading and prejudicial." *Kitchen v. Chippewa Valley Schs.*, 825 F.2d 1004, 1011 (6th Cir. 1987). If the party appealing the jury instructions failed to raise the issue at trial, however, we review for plain error. *See United States v. Thomas*, 74 F.3d 701, 712 (6th Cir. 1996). Craddock concedes that, because she did not object to the jury instructions below, plain error review applies here. Under this standard, we ask "whether the instructions, when taken as a whole, were so clearly wrong as to produce a grave miscarriage of justice." *United States v. Miller*, 734 F.3d 530, 538 (6th Cir. 2013) (quoting *United States v. Sanderson*, 966 F.2d 184, 187 (6th Cir. 1992)).

A verdict form's instruction "constitutes plain error when it 'misapplies the law as to a core issue in the case resulting in the substantial prejudice of the party challenging the instruction on appeal.'" *Reynolds v. Green*, 184 F.3d 589, 595 (6th Cir. 1999) (quoting *Latsis v. Chandris, Inc.*, 20 F.3d 45, 50 (2d Cir. 1994), *aff'd*, 515 U.S. 347 (1995)). An "erroneous verdict form" leads to "substantial prejudice" when the record clearly indicates—say, through the jury's questions to the court during deliberations—"that [the jurors] struggled with the verdict" and "that the language on the verdict form played a major role in their difficulty in deciding the case." *Id.* Such facts can lead to the conclusion that "it is more probable than not that had the verdict form reflected the correct legal standard, the outcome of the trial would have been different," *id.*, and thus, that the error was plain. *See id.* at 594-95.

The verdict form and jury instructions charged jurors regarding the lone claim in the case—Craddock's Title VII cause of action. "Title VII forbids an employer 'to . . . discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'" *Noble v. Brinker Int'l, Inc.*, 391 F.3d 715, 720 (6th Cir.

2004) (quoting 42 U.S.C. § 2000e-2(a)(1)).   The familiar *McDonnell Douglas* framework governs "the basic allocation of burdens and order of presentation of proof in a Title VII case alleging discriminatory treatment."   *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252 (1981); *see id.* at 252-53, 256-57 (clarifying that under *McDonell Douglas*, it is reversible error to place on the defendant the burden of persuading the finder-of-fact that it rejected the plaintiff for a nondiscriminatory reason).   "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Id.* at 253.

Because "[r]acial animus is not the only inference that can be drawn from evidence that the proffered reason for an adverse employment action was pretext," we have acknowledged that "[e]vidence that the employer's proffered reason for the termination was not the actual reason . . . does not mandate a finding for the employee" by the jury.  *Griffin v. Finkbeiner*, 689 F.3d 584, 594 (6th Cir. 2012).   This is consistent with a Title VII plaintiff's "ultimate burden":  to show "that she has been the victim of intentional discrimination"—in the context of termination, that her employer fired her because of her protected characteristic.   *Burdine*, 450 U.S. at 256. "The ultimate question is whether the employer intentionally discriminated, and proof that 'the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason . . . is correct.'"   *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 146-47 (2000) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 524 (1993)).   "In reaching this conclusion, however," the Supreme Court emphasized "that it is permissible for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation."   *Id.* at 147 (emphasis omitted).

Here, the jury instructions comported with governing law in several respects.  The verdict form read:

> We, the jury, unanimously answer the questions submitted by the Court as follows:
>
>   1. Has Plaintiff proved a prima facie case of race discrimination based on her termination by a preponderance of the evidence? ANSWER: Yes _____ or No _____ (Plaintiff has the burden of proof.)

If you answered "Yes," proceed to Question 2. Otherwise, sign the verdict form and return it to the Court.

2. Did FedEx offer evidence of a legitimate, non-discriminatory reason for terminating Plaintiff? ANSWER: Yes _____ or No _____

(Defendant need only state a legitimate, non-discriminatory reason for you to answer "yes" to this question.)

3. Did Plaintiff prove by a preponderance of the evidence that the reason advanced by Defendant for her termination was a pretext for race discrimination? ANSWER: Yes _____ or No _____ (Plaintiff has the burden of proof.)

If you answered "Yes," proceed to question 4. Otherwise, sign the verdict form and return it to the Court.

4. Did Plaintiff prove by a preponderance of the evidence that she was the victim of intentional race discrimination when she was terminated? Yes _____ or No _____

R. 146, PageID 1688-89. Questions 3 and 4 are consistent with our recognition that after a plaintiff produces evidence that the employer's stated reason for the adverse employment action was pretextual, it is for the jury to determine "whether racial animus was the actual reason for [her] termination." *Griffin*, 689 F.3d at 594.

Craddock challenges the overlap of items three and four on the verdict form. The language of the verdict form's third question asked jurors to decide whether FedEx's reason for terminating Craddock "was a pretext for race discrimination." Read in isolation, the jury's affirmative response to a question asking about pretext for "race" discrimination could reflect that it "believe[d] the reason offered by the plaintiff," for her termination—specifically, "that the plaintiff was the victim of intentional discrimination." *Barnes v. City of Cincinnati*, 401 F.3d 729, 737-38 (6th Cir. 2005). But the verdict form's next question then addressed "[t]he ultimate question" in a Title VII dispute, "whether the employer intentionally discriminated." *Reeves*, 530 U.S. at 146. On question four, the jury found that Craddock failed to carry her "ultimate burden" to demonstrate "that she has been the victim of intentional discrimination." *Burdine*, 450 U.S. at 256.

The form appears to split the "ultimate question" of intentional discrimination into two distinct inquiries that unnecessarily overlap. *Reeves*, 530 U.S. at 146. Craddock's counsel, however, did not object to the court's characterization that the verdict form reflected, "as to the ultimate question of whether the termination was based on race discrimination," that "the [jury's] answer was no." Craddock does not argue, and the record does not indicate, that the jurors "struggled with the verdict" or "that the language on the verdict form played a major role in their difficulty in deciding the case." *Reynolds*, 184 F.3d at 595. Considering the jury instructions and verdict form "as a whole," as we must, we cannot say that the verdict form's questions "were so clearly wrong as to produce a grave miscarriage of justice." *Miller*, 734 F.3d at 538.

Instruction on the *McDonell Douglas* framework may prove useful "in an appropriate circumstantial-evidence case"; however, "there is no requirement that" a court include such instruction "in all cases." *Blair v. Henry Filters, Inc.*, 505 F.3d 517, 526 n.9 (6th Cir. 2007) (emphasis omitted). Indeed, as this case and the concurrence illustrate, inclusion of the *McDonnell Douglas* factors on a verdict form, on its own, does not amount to reversible error, but can be inadvisable, as instruction on *McDonnell Douglas*'s first two steps risks confusing the jury.

This observation comports with the approach of some sister circuits. For example, district courts in the Eleventh Circuit "do not instruct juries on the prima facie case or the *McDonnell Douglas* framework." *Tynes v. Florida, Dep't of Juv. Just.*, 88 F.4th 939, 946 (11th Cir. 2023); *see also Dudley v. Wal-Mart Stores, Inc.*, 166 F.3d 1317, 1322 (11th Cir. 1999) ("We stress that it is unnecessary and inappropriate to instruct the jury on the *McDonnell Douglas* analysis."). Other circuits have adopted similar positions. *See Kanida Gulf Coast Med. Pers. LP*, 363 F.3d 568, 575 (5th Cir. 2004) (emphasizing that the *McDonnell Douglas* framework "is not the proper vehicle for evaluating a case that has been fully tried on the merits") (quoting *Powell v. Rockwell Int'l Corp.*, 788 F.2d 279, 285 (5th Cir. 1986)); *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 118 (2d Cir. 2000) (reiterating the Second Circuit's longstanding warning "that 'trial judges should not "import[] uncritically" language used in the traditional . . . *McDonnell Douglas* formulation into jury charges because'" such language is not relevant at that stage and can confuse the jury (alterations in original)) (quoting *Renz v. Grey Advertising, Inc.*,

135 F.3d 217, 223 (2d Cir. 1997)); *Gehring v. Case Corp.*, 43 F.3d 340, 343 (7th Cir. 1994) (observing that the district court did not err by not allowing the jury to deliberate on the issue of the prima facie case because "[o]nce the judge finds that the plaintiff" has met their prima facie case "and that the defendant has produced" a neutral explanation, "the burden-shifting apparatus has served its purpose, and the only remaining question—the *only* question the jury need answer—is whether the plaintiff is a victim of intentional discrimination" (emphasis in original)).

## E. Cumulative Errors

"The cumulative effect of errors that are harmless by themselves can be so prejudicial as to warrant a new trial." *United States v. Sypher*, 684 F.3d 622, 628 (6th Cir. 2012). Specifically, if "the cumulative effect of the errors . . . 'deprived [the defendant] of a trial consistent with constitutional guarantees of due process,'" then a new trial is appropriate. *Id.* (quoting *United States v. Hernandez*, 277 F.3d 686, 697 (6th Cir. 2000)).

As explained above, the district court's bifurcation, evidentiary, and trial management rulings were not erroneous. And, just as the verdict form issue did not constitute plain error, it did not deny Craddock due process. *See Sypher*, 684 F.3d at 628. This record presents "no cumulation of errors." *United States v. Bankston*, 820 F.3d 215, 234 (6th Cir. 2016).

## III. CONCLUSION

There being no error in the challenged actions of the district court, we **AFFIRM** the jury's verdict.

_____

**OPINION**

_____

McKEAGUE, Circuit Judge, concurring.  I agree fully with the principal opinion's resolution of this case.[1]  I write separately to emphasize that I view the district court's choice to include the *McDonnell Douglas* factors on the special verdict form as a mistake—though not one that rises to legal error.  In my view, the *McDonnell Douglas* factors seldom help a jury decide the ultimate question it must answer when faced with an intentional discrimination claim under Title VII.  Indeed, as this case illustrates, inclusion of the factors on a verdict form might tend to confuse the issues—as they appear to have confused Craddock here.

Satisfying the *McDonnell Douglas* factors would *permit* the trier of fact to infer intentional discrimination.  *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 146–147 (2000).  But satisfying the factors does not alone *necessarily* establish intentional discrimination.  *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 524 (1993).  The jury must still believe the plaintiff has met her burden of persuasion to show, by a preponderance of the evidence, that her termination was *actually caused* by intentional racial discrimination.  *See id.*  This result is not logically inconsistent: the jury might believe that FedEx's proffered justification for firing Craddock was, indeed, pretextual, but that it was pretext for some *other* unstated reason.  It does not necessarily follow that this unstated reason was intentional racial discrimination.  *See Griffin v. Finkbeiner*, 689 F.3d 584, 594 (6th Cir. 2012).

Like the principal opinion ably explains, the district court did not err by including those factors on the special verdict form.  *See* Principal Op. at 12–16; *see also Brown v. Packaging Corp. of Am.*, 338 F.3d 586, 595–96 (6th Cir. 2003) (Clay, J., concurring).[2]  But the *McDonnell Douglas* framework best serves courts during the pretrial phases of litigation—largely at summary judgment.  It enables a judge, making legal findings, to determine whether a rational

_____

[1]Because all three judges on this panel join this opinion in addition to the principal opinion, this separate writing also constitutes the opinion of the Court.

[2]Like in this case, this portion of Judge Clay's opinion garnered a majority of panel votes and constitutes the opinion of the Court.  *See Brown*, 338 F.3d at 595 n.1.

jury might be able to infer intentional discrimination from the evidence discovered during the litigation. The framework is not tailored to helping the jury answer the ultimate question: whether intentional discrimination actually occurred. *See In re Lewis*, 845 F.2d 624, 634 (6th Cir. 1988) ("Rather than confuse the jurors with legal definitions of the burden of proof, persuasion, and production and how they shift under *McDonnell Douglas*, we find that [an instruction on the ultimate burden] was a clear and preferable statement of the law.").

Indeed, I'm inclined to endorse the "clear preference" that the Sixth Circuit has at times expressed for avoiding excessively legalistic and misleading formulations of the *McDonnell Douglas* standard in a jury-verdict form. *Brown*, 338 F.3d at 592 (principal op.) (collecting cases, including *In re Lewis*, 845 F.2d 624, in which the federal circuits have indicated that juries generally should not be charged with language from the *McDonnell Douglas* framework). I believe that, at a minimum, including the first two steps in the *McDonnell Douglas* framework—which (1) place the burden of production on the plaintiff to establish a prima facie case of discrimination and (2) then, once the plaintiff has done so, shift the burden to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse action—serves very little value to a jury. *See Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253–55 (1981). The first two steps are "not onerous" for either party. *Id.* at 253. The burden-shifting in these two steps merely establishes, first, a presumption of discrimination, and second, a rebuttal of that presumption. After these steps occur, the plaintiff's burden of production to show that the adverse action was pretextual "merges" with the plaintiff's "ultimate burden of persuading the court that she has been the victim of intentional discrimination"—the ultimate question that the jury must answer. *Id.* at 256; *see also Reeves*, 530 U.S. at 146.

By design, the *McDonnell Douglas* factors help clarify whether certain evidence might satisfy a judgment for either party. *Burdine*, 450 U.S. at 254–255. At the first two steps, that low bar tells a jury little about whether the plaintiff has in fact cleared her burden of persuasion on the ultimate question of liability. I acknowledge that, arguably, the third step in the framework—whether the plaintiff can show the defendant's "legitimate" justification is pretextual—might hold some value for a jury, in large part because the burdens of production and persuasion merge and the question of pretext might serve an important role in determining a

defendant's intent. Indeed, when this Court has previously indicated that the *McDonnell Douglas* factors could help clarify the jury's duty, we have focused on the final steps in the framework to explain how they might provide guidance. In *Brown*, Judge Clay mused that the "risk of confusion should be minimal or nonexistent when the judge explains to the jury that *McDonnell Douglas* provides a backdrop to the jurors' role as factfinders." *Brown*, 338 F.3d at 599 (Clay, J., concurring). He continued by emphasizing that the jury's "ultimate duty is to determine whether (1) the employer's proffered legitimate reason for an adverse employment action was pretextual"—the third step in the *McDonnell Douglas* framework—and "(2) the employer's true motive for taking the adverse action was illegal discrimination"—the final question that the jury must answer. *Id.* But including the first two steps in the framework serves no similar benefit—in large part because neither question weighs much on the *ultimate* question: whether the plaintiff has proven that the defendant intentionally discriminated against her. Instead, the first two steps provide a fairly low bar—a prima facie presumption and a rebuttal of that presumption—that functions merely as a threshold inquiry for judges to assess the initial viability of a discrimination case at summary judgment.

Although the district court did not err by including the factors on the verdict form, I hope this case shows why district courts should nonetheless avoid doing so.